**THRIFTY RENT–A–CAR SYSTEM, INC., Plaintiff, Appellee,**

v.

**THRIFT CARS, INC., Defendant, Appellant.**

**THRIFTY RENT–A–CAR SYSTEM, INC., Plaintiff, Appellant,**

v.

**THRIFT CARS, INC., Defendant, Appellee.**

**Nos. 86–2077, 86–2078.**

United States Court of Appeals, First Circuit.

Argued June 4, 1987.

Decided Oct. 28, 1987.

William J. Brennan, III with whom Thomas E. Hastings, Smith, Stratton, Wise, Heher & Brennan, Princeton, N.J., Richard F. McCarthy and Willcox, Pirozzolo & McCarthy, Boston, Mass., were on brief, for Thrift Cars, Inc.

Robert W. Sacoff, Washington, D.C., with whom Kathleen S. Taylor, Denver, Colo., and Saidman, Sterne, Kessler & Goldstein, Washington, D.C., were on brief, for Thrifty Rent-A-Car System, Inc.

Before COFFIN, DAVIS\* and SELYA, Circuit Judges.

DAVIS, Circuit Judge.

In this trademark infringement suit brought by Thrifty Rent-a-Car System, Inc. (Thrifty), that firm and defendant Thrift Cars, Inc. (Thrift Cars) both appeal the decision of the district court for the District of Massachusetts (Young, J.), 639 F.Supp. 750. After a bench trial, the court enjoined Thrift Cars from conducting a car or truck rental or leasing business outside of Taunton, Massachusetts under the "Thrift Cars" name, and limited Thrift Cars' advertising to those media it had used prior to July 26, 1964, the date that Thrifty obtained federal registration of its own mark. Concomitantly, the court prohibited Thrifty from oper-

\* Of the Federal Circuit, sitting by designation.

ating any of its business establishments in East Taunton, Massachusetts or from advertising in any media principally intended to target the East Taunton community. We affirm.

## I.

### Background [1]

#### A. *Thrifty Rent-a-Car System, Inc.*

Thrifty Rent-a-Car System traces its beginnings to March 3, 1958 when L.C. Crow, an individual, began renting cars in Tulsa, Oklahoma, under the trade name "Thrifty." In 1962, Stemmons, Inc., an Oklahoma corporation, purchased Crow's business and expanded the business to Houston, Texas, renting automobiles to customers under the "Thrifty" trade name. Stemmons subsequently changed its name to The Thrifty Rent-a-Car System, Inc. and expanded the business to Wichita, Kansas, Dallas, Texas and St. Louis, Missouri. On July 30, 1962 Thrifty Rent-a-Car made an application to the United States Patent Office to register the service mark "Thrifty Rent-a-Car System" and was granted that mark in July 1964. Thrifty expanded the business through both franchises and directly-owned rental agencies. In December 1967, a Thrifty Rent-a-Car outlet opened in Massachusetts. By the time of trial, Thrifty had become the fifth largest car rental agency worldwide, and operated car rental outlets in 23 locations in Massachusetts.

#### B. *Thrift Cars, Inc.*

Thrift Cars' rental business began in October 1962 and was incorporated in Massachusetts as Thrift Cars, Inc. Thrift Cars' owner and proprietor, Peter A. Conlon, at first began a modest car-rental service out of his home in East Taunton, Massachusetts. The East Taunton business was largely limited to what the car-rental industry considers a "tertiary market," that is, the market that serves individuals needing replacement cars to bridge the short term car rental and the longer term automobile lease. Thrift Cars provided customized

service, arranging delivery of the rental car to the customer as well as pick-up at the termination of the rental period. In the years immediately following 1962, Thrift Cars delivered automobiles to Boston's Logan Airport and to various cities on Cape Cod and to Nantucket. Prior to Thrifty's federal registration in July 1964, Thrift Cars advertised in the Taunton area yellow pages telephone directory, in *The Taunton Daily Gazette, The Cape Cod Times* (a newspaper of general circulation servicing Cape Cod, Martha's Vineyard, and Nantucket) and in *The Anchor* (the newspaper of the Roman Catholic Diocese of Fall River). In 1963 Thrift Cars also advertised in the *The Inquirer and Mirror*, a Nantucket newspaper. In 1970, some six years after Thrifty had obtained federal registration of its mark, Thrift Cars received a license to operate a car rental facility at the Nantucket airport, and Conlon, Thrift Cars' Chief Executive Officer, moved the major portion of the business to Nantucket.

The Nantucket facility, unlike the operation at East Taunton, was operated largely as a traditional car rental service, servicing the resort market. Customers came directly to the airport to arrange for rental and pick-up of the automobile. Thrift Cars' post–1970 Nantucket operation thus came into a direct clash with Thrifty, which was also operating a car rental facility directed to the resort market in the Cape Cod area.

#### C. *Litigation below.*

Thrifty brought this action against Thrift Cars in federal district court, alleging trademark infringement and false designation of title under the Lanham Act. 15 U.S.C. § 1125(a) and §§ 1051–1127. The parties stipulated that the Thrift and Thrifty names are confusingly similar—as, of course, they are. The trial court found that Thrift Cars' business activities as of the critical date of July 26, 1964 (the date of Thrifty's registration) did not extend to areas beyond East Taunton, Massachusetts. The district court then enjoined

---

**1.** These facts were found by the district court and are not clearly erroneous. Fed.R.Civ.P. 52(a).

Thrift Cars from using "Thrift" in conducting a car rental business outside of Taunton. The court also enjoined Thrift Cars from advertising in media directed outside of East Taunton, except in publications in which Thrift Cars had advertised prior to July 26, 1964.[2]

Conversely, the court enjoined Thrifty from operating any business establishment in East Taunton and prohibited it from advertising in any media principally intended to target the East Taunton area.

Both parties appealed. Thrift Cars claims that the court erred by limiting its car rental activities under the "Thrift" name to Taunton, urging that this court expand its permissible business activities to southeastern Massachusetts, including Nantucket. Thrifty's cross-appeal argues that the district court erred in allowing Thrift Cars to conduct business in any locality under the Thrift Cars name because the business had not been continuous until trial, as required under the Lanham Act. In the alternative, Thrifty urges that the scope of Thrift Cars' business activities should be limited to East Taunton, not Taunton, because the record indicates that Thrift Cars' business had been limited to *East* Taunton, not to Taunton, prior to Thrifty's 1964 federal registration. Thrifty also says that the district court allowed Thrift Cars too broad an advertising base since it permitted Thrift Cars to advertise in publications directed outside of East Taunton.

## II.

### Discussion

As the district court recognized, disposition of this case revolves around geographical market protection and priority afforded to trademark users[3] under the Lanham Act. Congress passed the Lanham Act in 1946 with the primary purpose of providing some nationwide protection for trademark users. Prior to that time, trademark protection was generally governed by state common law. The normal rule was that the first to appropriate a mark had the exclusive right to use that mark in business. 3 Callman, *Unfair Competition and Trademarks* § 76.1 (3d ed. 1970). Common law exceptions to the general rule developed as to remote users, but with increased interstate commerce, and the greater mobility of society as a whole, a federal scheme with some consistency was felt to be necessary. H.R.Rep. No. 219, 79th Cong., 1st Sess. 4 (1945); see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 193, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 425, 36 S.Ct. 357, 365, 60 L.Ed. 713 (1916) (Holmes, J. concurring).

Section 15 of the Lanham Act, 15 U.S.C. § 1065, provides that a party like Thrifty, which has successfully registered and continued using a federal service mark, has an incontestable right to use the mark throughout the United States in connection with the goods or services with which it has been used. See Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1568 (Fed.Cir.1983).[4] Lanham Act registration also puts all would-be users of the mark (or a confusingly similar mark) on constructive notice of the mark. 15 U.S.C. § 1072.

### A. "Limited area exception".

However, Lanham Act § 33(b), 15

---

2. The court specifically limited Thrift Cars' advertising outside of East Taunton to the yellow pages of the Taunton area telephone directory, *The Cape Cod Times, The Inquirer and Mirror, The Taunton Daily Gazette,* and *The Anchor.*

3. To be technically precise, this case involves service marks rather than trademarks because the marks and trade names identify the source of services rather than vendible commodities. 15 U.S.C. § 1127.

4. The district court determined that Thrifty's mark became incontestable on July 26, 1969. Under 15 U.S.C. § 1065, a registrant may make its mark incontestable by filing an affidavit within one year after the expiration of any five year period following registration, during which the mark has been in continuous use. The critical date in determining the respective rights of the parties, however, is July 26, 1964, the date of Thrifty's federal registration.

U.S.C. § 1115(b)(5)[5] declares a "limited area" exception to that general premise of incontestability, an exception which the district court concluded was applicable in this case. The essence of the exception embodied in § 1115(b)(5) is based on common law trademark protection for remote users established by the Supreme Court in *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918). Subsection (5) confers upon a junior user, such as Thrift Cars, the right to continued use of an otherwise infringing mark in a remote geographical area if that use was established prior to the other party's federal registration. The junior user is permitted to maintain a proprietary interest in the mark even though it has no general federal protection through registration. To be able to invoke the § 1115(b)(5) exception, however, the junior user must have used the mark continuously in that location and initially in good faith without notice of an infringing mark. *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904, 907 (7th Cir.1968).

To sustain its "limited area" defense of 15 U.S.C. § 1115(b)(5), Thrift Cars was required to demonstrate (1) that it adopted its mark before Thrifty's 1964 registration under the Lanham Act, and without knowledge of Thrifty's prior use; (2) the extent of the trade area in which Thrift Cars used the mark prior to Thrifty's registration; and (3) that Thrift Cars has continuously used the mark in the pre-registration trade area. *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 640 (D.C.Cir.1982). There is no issue that Thrift Cars had adopted its mark in good faith and without notice prior to Thrifty's registration. Rather, the questions are whether Thrift Cars had established a market presence in any locality, the extent of that market presence, and whether that market presence had been continuous within the meaning of § 1115(b)(5). The district court found that Thrift Cars' use of the service mark had been continuous in East Taunton within the meaning of § 1115(b)(5), but also found that it had not established a sufficient market presence outside of East Taunton (i.e., in Nantucket or other areas of southeastern Massachusetts) to establish there a continuous market presence sufficient to confer on Thrift Cars trademark protection under the statute.

As the district court held, the scope of protection afforded by § 1115(b)(5) is limited. A pre-existing good faith user's rights are frozen to the geographical location where the user has established a market penetration as of the date of registration. Such users are unable thereafter to acquire additional protection superior to that obtained by the federal registrant. *Natural Footwear, Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3d Cir.), *cert. denied*, 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985); *Burger King of Florida, supra*, 403 F.2d at 908. The district court therefore held that Thrift Cars' expansion into new market areas after the 1964 date of Thrifty's federal registration is not protected under § 1115(b)(5).

The parties vigorously debate whether "continuous activity" within the "limited area" exception of § 1115(b)(5) is a question of fact, and thus subject to the clearly erroneous standard of review, or an issue of law, and therefore open to plenary review by this court, or a mixed question of law and fact. We conclude that this is a mixed question, which in this circuit is generally subject to a clearly erroneous stan-

**5.** Section 1115(b)(5) provides in pertinent part:

If the right to use the registered mark has become incontestable under § 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce ... except when one of the following defenses or defects is established:

....

(5) That the mark whose use is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter ...: Provided, however, that this defense of defect shall apply only for the area in which such continuous prior use is proved

....

dard. *Foggs v. Block*, 722 F.2d 933, 939 (1st Cir.1983), *rev'd on other grounds*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985); *RCI Northeast Services Division v. Boston Edison Co.*, 822 F.2d 199, 201–03 (1st Cir.1987). To this there is an exception in cases where "there is some indication that the court misconceived the legal standards." *Sweeney v. Board of Trustees*, 604 F.2d 106, 109 n. 2 (1st Cir.1979).[6] Continuous activity within the meaning of the statute is dependent on a threshold level of geographical market penetration. *See Foxtrap, Inc., supra*, 671 F.2d at 640. This circuit has not yet squarely spoken on this issue.[7] Other circuits have, however, pointed the way. In *Sweetarts v. Sunline, Inc.*, 436 F.2d 705 (8th Cir.1971), for example, the Eighth Circuit adopted the language of that district court's decision below:

> However, there remain a number of states in which plaintiff does or has done measurable business. To what extent these areas are within plaintiff's effective market area, we believe presents a *genuine factual issue*.

*Id.* at 708 (emphasis added). Even if we, like the *Sweetarts* court, adopted a standard of "significant enough [penetration] to pose a real likelihood of confusion in that area," *id.* at 710 (citation omitted), we could discern no legal error on the part of the district court. Thrift Cars' penetration here would be *de minimis* by any measure.

B. *Thrift Cars did not demonstrate a continuous presence outside of East Taunton within the meaning of § 1115(b)(5).*

■ The district court found that Thrift Cars had not established a continuous presence in any area outside of East Taunton—prior to July 1964—adequate to satisfy the requirements of § 1115(b)(5). That finding was necessarily based on the hard facts

and the inferences drawn from the trial evidence. The limited advertising Thrift Cars had done was not deemed sufficient to establish a presence outside East Taunton; nor were Thrift Cars' sporadic rentals in Nantucket and elsewhere in southeastern Massachusetts enough to sustain Thrift Cars' claim that it had already expanded out of East Taunton prior to Thrifty's federal registration.[8] *See, e.g., Raxton Corp. v. Anania Assocs. Inc., supra*, 635 F.2d at 928; *Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 732 (8th Cir. 1978). These findings are not clearly erroneous and we do not overturn the district court's findings on this matter.

■ We also note that the fact that Thrift Cars had desired to expand into the Nantucket market prior to July 1964 by unsuccessfully applying for a license to operate at the airport is not sufficient to meet the requirements of § 1115(b)(5). A mere desire, without more, will not confer upon Thrift Cars the ability to exclude Thrifty from Nantucket. *Blue Ribbon Feed Co. v. Farmers Union Cent. Exchange, Inc.*, 731 F.2d 415, 422 (7th Cir. 1984). The policy behind the Lanham Act is very strong and the party challenging the federal registrant has the burden of showing a continued and actual market presence in order to qualify for the "limited area" exception under the statute. The trial court permissibly found that Thrift Cars did not meet its burden in this respect.

C. *Thrift Cars' activities in East Taunton fall into the "limited area" defense of § 1115(b)(5).*

■ The more difficult question is whether Thrift Cars has established and maintained a continuous market presence in East Taunton so as to sustain an injunction against Thrifty in that region. Under

---

**6.** The determination of "continuous presence" in this case does not involve or implicate any erroneous ruling of law.

**7.** In *Raxton Corp. v. Anania Assocs., Inc.*, 635 F.2d 924, 928 (1st Cir.1980), this circuit, while not expressly addressing whether market penetration was an issue of law or a determination of fact, treated it as one of fact.

**8.** At trial, Conlon of Thrift Cars indicated that, prior to Thrifty's federal registration, Thrift Cars maintained no cars on Nantucket and that there had been only three or four Thrift auto rentals directed to Nantucket.

§ 1115(b)(5), the junior user must show that it has made continuous use of the mark prior to the issuance of the senior user's registration and must further prove continued use up until trial. *Foxtrap, Inc., supra*, 671 F.2d at 640; *see also* 2 McCarthy, *Trademarks and Unfair Competition* § 26:18 (2d ed. 1984). Otherwise, the defense "dries up" and the junior user cannot assert rights in the limited trade area. *See, e.g., Casual Corner Assocs. Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709 (9th Cir.1974) (one-year hiatus in using mark precluded use of the "limited area" defense); *Decatur Fed. Savs. & Loan Assn. v. Peach State Fed. Savs. & Loan Assn.*, 203 U.S.P.Q. 406 (N.D.Ga.1978) (sixteen months of non-use barred use of defense).

■ Here, the district court properly found that Thrift Cars established a significant enough market share in East Taunton prior to Thrifty's 1964 federal registration to constitute continuous use there at least until May 1970, when Conlon opened business operations in Nantucket. The pivotal issue is, however, whether Thrift Cars continued enough of a market presence in East Taunton after May 1970 (to the time of trial) to qualify for the § 1115(b)(5) defense. The district court made no specific findings on this precise matter (though its opinion reveals an implicit affirmative finding), and we think it is a close call whether Thrift Cars conducted a significant amount of business in East Taunton up until trial. Nevertheless, we believe that on this record Thrift Cars should be entitled to continue doing business in East Taunton and Thrifty should be enjoined from establishing a franchise there. First, the record shows that Thrift Cars continually advertised in media directed specifically to the East Taunton area such as the Taunton area telephone yellow pages, even after opening the Nantucket facility. The record also reveals that Thrift Cars made a showing of general reputation in the East Taunton area throughout the period involved by maintaining an East Taunton address and an East Taunton telephone number. We cannot say that the district court's inherent finding of continuous use should be upset.

Although Thrift Cars' business was solely in East Taunton, the district court prohibited its future conduct of any car or truck rental leasing business outside Taunton, Massachusetts. This was not error or an abuse of discretion. East Taunton is not a separate entity but simply an integral part of Taunton itself. In these circumstances, it is appropriate to direct the injunction to the overall entity. (East Taunton appears to be a popular name for or a colloquial designation for one part of Taunton.)

### D. *The district court's injunction did not freeze Thrift Cars' business activities.*

■ Thrift Cars argues that the district court's injunction is tantamount to freezing Thrift Cars' business activities rather than limiting the area in which those activities are conducted. We disagree. While we recognize that the automobile rental business, by its very nature, is mobile, and that we cannot, for example, prevent Nantucket residents from seeking out Thrift Cars in its protected East Taunton geographical area, the courts can prevent Thrift Cars from maintaining a rental agency in Nantucket using the Thrift Cars name. *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 154 (6th Cir.1973); *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 843 (9th Cir.1969). The district court considered East Taunton and Nantucket as two separate market areas, not parts of a single southeastern Massachusetts market, as Thrift Cars would have us believe. It is settled that a junior user can conduct its activities within the market it had carved out for itself before the senior user obtained federal registration. *Raxton Corp. v. Anamia Assocs., Inc., supra*, 635 F.2d at 927. But there was no showing in this case that Nantucket is within the same market area as East Taunton. On the contrary, it seems clear that the major reason that Thrift Cars began to do significant business in Nantucket was because Conlon deliberately moved the major portion of the business there and opened up a rental

counter at the Nantucket airport after Thrifty's registration. This action constituted an expansion out of the East Taunton area after the critical date of Thrifty's registration, not a continuation of business activities within the same market area. The result is that the district court's injunction did not freeze Thrift Cars' business activities, but merely confined them, correctly, to the market area it had established prior to Thrifty's federal registration.

E. *The district court did not abuse its discretion by allowing Thrift Cars to advertise in those publications it had used prior to Thrifty's registration.*

The district court allowed Thrift Cars to continue advertising in those media it had used prior to the critical date of July 26, 1964. Thrifty now urges that the court allowed Thrift Cars too broad an advertising distribution base, because it extended outside East Taunton to Cape Cod and Nantucket.[9] Thrifty says that by permitting both parties to advertise in the major resort area publications, the court abused its discretion because substantial consumer confusion is likely to result.

We reject Thrifty's arguments and agree with the district court that to contract Thrift Cars' advertising base would be a punitive move. The district court did not allow Thrift Cars to advertise in any publications that it had not used prior to Thrifty's registration. On the contrary, the court simply authorized Thrift Cars to use only the same newspapers it had used prior to that critical date. While we recognize that some consumer confusion may result because there will be some overlap in advertising, the Lanham Act does not require the complete elimination of all confusion. *Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc.*, 293 F.2d 685 (C.C.P.A.1961), *cert. denied*, 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962). We think, moreover, that the confusion

spawned as a result of Thrift Cars' advertising will be minimal and should not significantly interfere with Thrifty's proprietary rights in its mark. *See Burger King of Florida, supra*, 403 F.2d at 908–09. Each party shall bear its own costs.

AFFIRMED.

---

**9.** The injunction permitted Thrift Cars to continue advertising in the *Inquirer and Mirror*, the local Nantucket newspaper, as well as in the *Cape Cod Standard-Times*, a Cape Cod, Nantucket and Martha's Vineyard newspaper, and in *The Anchor*, a southeastern Massachusetts weekly.