### UNO'S PIZZA, INC., Plaintiff,

### v.

### PIZZERIA UNO CORPORATION, Uno Restaurants, Inc., and Pyramid Companies, Defendants.

### No. CIV–89–1154C.

United States District Court, W.D. New York.

Oct. 13, 1989.

---

Sommer, Oliverio & Sommer (Daniel C. Oliverio, of counsel), Buffalo, N.Y., for plaintiff.

Wolf, Greenfield & Sacks (John L. Welch, of counsel), Boston, Mass., and Saperston & Day (Tricia T. Semmelheck, of counsel), Buffalo, N.Y., for defendants Pizzeria Uno Corp. and Uno Restaurants.

Rodgers, Menard & Coppola (Mark C. Rodgers, of counsel), Buffalo, N.Y., for defendant Pyramid Companies.

## BACKGROUND

CURTIN, District Judge.

Plaintiff Uno's Pizza, Inc., commenced this action against defendants Pizzeria Uno Corporation ("Pizzeria Uno"), Uno Restaurants, Inc. ("Uno Restaurants"), and the Pyramid Companies ("Pyramid") seeking a declaration by the court that it has a superior right to use the mark "UNO," or "any colorable variation thereof," for restaurant services or related enterprises in the plaintiff's established trading area in western New York.

Pending before the court are the applications of both the plaintiff and defendants Pizzeria Uno and Uno Restaurants for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Briefs and affidavits have been submitted by the parties, and the court considered

oral argument on September 20, 1989. After carefully examining the record and considering the respective arguments, the court has determined that none of the parties has established that it is entitled to the issuance of an injunction.

The principal focus of this litigation is on the plaintiff's claims under the Lanham Trade–Mark Act, 15 U.S.C. §§ 1115(b)(5), 1125(a). The plaintiff also alleges violations of New York State law for trademark infringement, unfair competition, and dilution of business reputation. The parties agree, and the court has determined, that jurisdiction lies in this court.

Pyramid is in the process of developing a large shopping mall, known as the Walden Galleria Mall ("the mall"), in the Town of Cheektowaga. Pyramid is the owner and operator of the mall. Defendants Pizzeria Uno and Uno Restaurants plan to open a restaurant in the mall in October, 1989, under the name "Pizzeria Uno." The plaintiff's application seeks, essentially, to enjoin the defendants from using the mark "UNO" in connection with the restaurant pending final adjudication of its claim that it has a superior right to use of the mark. The defendants' application seeks to enjoin the plaintiff from using the mark "UNO'S" in connection with two establishments the plaintiff is currently operating in West Seneca and East Aurora, claiming that such use violates the rights acquired by the defendants after the mark "PIZZERIA UNO" was registered in 1978.

The plaintiff is a New York corporation that was organized in 1971. It has owned and operated a number of restaurants in the western New York area that offer pizza and a varied menu emphasizing Italian food. It has owned and operated restaurants at the following locations for the indicated periods of time:

(a) Uno's 1 Pizza, 507 Center Road, West Seneca, New York, from 1971 until 1984;

(b) Uno's 1 Pizza, 2580 Elmwood Avenue, Kenmore, New York, from 1972 until 1987;

(c) Uno's 1 Pizza, 1091 Oliver Street, North Tonawanda, New York, from 1973 until 1986;

(d) Uno's 1 Pizza, 6000 South Park Avenue, Hamburg, New York, from 1974 until 1987;

(e) Uno's Pizza, 408 Main Street, East Aurora, New York, from 1982 to date;

(f) Uno's Family Restaurant, 1481 Union Road, West Seneca, New York from 1984 to date.

Item 3, Affidavit of Roger Paul ("Paul Affidavit") at ¶ 4. As indicated above, the plaintiff is presently operating only the latter two restaurants, which are located on Union Road in West Seneca and on Main Street in East Aurora.[1] The mall is approximately three-and-one-half to five miles from the plaintiff's West Seneca restaurant; it is approximately fourteen or fifteen miles from the plaintiff's East Aurora location.

According to the plaintiff, it has emphasized the use of the mark "UNO'S" at all of its locations through promotion and advertising since 1972. Item 3, Paul Affidavit at ¶¶ 7–15. The plaintiff describes its establishments as "offer[ing] a variety of services, including delivery, a pick-up window and table service. In addition ... Uno's offers a varied menu that includes not only pizza and Italian dishes, but also sandwiches, soups, salads, seafood and other appetizer-type foods." *Id.* at ¶ 9. In contrast to the defendants' large operation, the plaintiff's facilities have been located on suburban streets in converted homes or similar structures that are much smaller by comparison. The East Aurora restaurant is primarily a take-out operation, with only a few booths for customers. The West Seneca location also offers take-out service,

---

**1.** In 1984, the plaintiff closed the "Uno's 1 Pizza" located on Center Road in West Seneca, and opened "Uno's Family Restaurant" on Union Road in West Seneca. According to the plaintiff, Uno's Family Restaurant is located a half-mile from the site of Uno's 1 Pizza. The plaintiff has explained that the change in its West Seneca location came about because of its desire to expand its business. Uno's Family Restaurant was opened because zoning restrictions prohibited further expansion at the Center Road site. *See* Item 3, Paul Affidavit at ¶ 4 n. 2.

but apparently provides more space for dining on the premises.

According to the defendants, the first Pizzeria Uno restaurant opened in Chicago in 1943 and acquired a national reputation for its distinctive "deep-dish" pizza. The mark "PIZZERIA UNO" was registered with the United States Patent Office on April 11, 1978, although the registration contains a disclaimer regarding the right to exclusive use of the word "Pizzeria." *See* Defendants' Exhibit 25. Rights to the mark were acquired by Uno Restaurant Corporation in 1979 for the purpose of developing a chain of Pizzeria Uno restaurants.

Defendants Pizzeria Uno and Uno Restaurants, wholly owned subsidiaries of Uno Restaurant Corporation, have a total of fifty-five restaurants in cities such as New York, Boston, Albany, Miami, and London. The defendants assert that these restaurants feature a distinguishing decor of brass, polished wood, and checkered ceramic tile, as well as waiters and waitresses who wear distinctive attire. Annual gross revenues for the chain currently exceed $100,000,000. The defendants have nine restaurants in New York State—four in Manhattan, three on Long Island, one in Albany, and one in Rochester. In May, 1988, the defendants reached an agreement with Pyramid to open a Pizzeria Uno restaurant in the mall in Cheektowaga. According to the defendants, the construction costs for this location are expected to exceed $1,000,000.

The parties originally quarreled over the marks at issue in 1981. After learning that the plaintiff planned to register the mark "UNO'S FAMILY RESTAURANT," counsel for defendant Pizzeria Uno wrote to plaintiff's counsel in April, 1981, and demanded that the plaintiff discontinue further use of the mark. *See* Item 7 at Exhibit 11. In reply, plaintiff's counsel stated that the plaintiff would abandon the trademark application and phase out use of the mark. Plaintiff's counsel also stated that the mark would not be used in future advertisements. In the letter, counsel noted that the plaintiff had used the mark "UNO'S PIZZA" in western New York since April, 1972, and that it had four restaurants using the mark that had opened several years prior to the registration of the mark "PIZZERIA UNO." *See id.* at Exhibit 12. Defendant Pizzeria Uno then sought more information, *id.* at Exhibit 13, and the plaintiff responded by giving the addresses of the four pre–1978 restaurants, as well as a description of the operations. *Id.* at Exhibit 14.

Further correspondence followed in 1984, when defendant Pizzeria Uno wrote to plaintiff's counsel to inquire about any geographical expansion by the plaintiff beyond the boundaries of its pre–1978 trading area. *Id.* at Exhibit 15. Plaintiff's counsel responded by stating that his client had considered the matter settled, and by requesting that Pizzeria Uno clarify its charge that the plaintiff had improperly expanded its trading area. *Id.* at Exhibit 16. The defendants claim that the plaintiff neither disclosed the East Aurora location nor revealed that it was still using the mark "UNO'S FAMILY RESTAURANT" in West Seneca. They further assert that, as a result, they continued to believe that the plaintiff was operating only the establishments that had opened prior to 1978 and thus took no action. Item 7, Affidavit of Aaron Spencer ("Spencer Affidavit") at ¶ 12. The defendants' announcement of plans to open a restaurant in the mall followed in 1988.

In January, 1989, plaintiff's counsel wrote to defendant Pizzeria Uno and threatened to seek an injunction and damages if the mall location was opened, invoking Section 33(b)(5) of the Lanham Trade-Mark Act. Item 7 at Exhibit 6. A series of letters followed, with the defendants stating that they were proceeding with plans to open the mall restaurant and urging the plaintiff to commence an action. *See id.* at Exhibits 7–10. Settlement efforts during that period failed, and each side has charged the other with bad faith. The record indicates that the plaintiff told the defendants that it would file suit by July 31, 1989, if it intended to proceed with litigation, *see* Item 7, Spencer Affidavit at ¶ 9; *id.* at Exhibit 9, but the plaintiff did

not commence the present action until September 5, 1989.

## DISCUSSION

■ The relevant standards for issuance of a preliminary injunction, which serves to "preserve the status quo pending the final determination of a dispute," *Arthur Guinness & Sons v. Sterling Publishing Co.,* 732 F.2d 1095, 1099 (2d Cir.1984), are well settled. An applicant has the burden of showing "both possible irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 74 (2d Cir.1985). In the present case, the plaintiff contends that it has established that it will suffer irreparable harm unless an injunction issues, and that there is a "substantial likelihood" that it will be successful on the merits at trial. With regard to the issue of irreparable harm, the plaintiff argues it has established that a "likelihood of confusion" between the marks "PIZZERIA UNO" and "UNO'S" would result from the failure to issue an injunction, and that that, without more, manifests irreparable harm. *See* Item 2 at 11.

Initially, the court notes that the plaintiff misstates the standard it must meet in order to establish entitlement to issuance of an injunction. The plaintiff acknowledges that one of the alternative tests it must pass requires it to establish both irreparable harm and a likelihood of success on the merits at trial, and then argues that it can establish irreparable harm by showing a likelihood of confusion. *See* Item 2 at 10–11. The plaintiff then argues, however, that the "key" issue before the court is thus whether it has shown "a probability of success on the merits of its claim of a 'likelihood of confusion' between the marks," citing *Berrigan v. Norton,* 451 F.2d 790 (2d Cir.1971). *Id.* at 11.

In fact, establishing a likelihood of confusion would only satisfy one part the test—namely, that possibly irreparable harm would result from the failure to issue an injunction. The plaintiff, however, would still have to establish a likelihood of success on the merits of the underlying controversy—that is, the issue of which party has a superior right to the mark in dispute—and nothing in *Berrigan v. Norton* suggests otherwise. *See Arthur Guinness & Sons v. Sterling Publishing Co.,* 732 F.2d at 1101. In other words, establishing a likelihood of confusion will not advance the plaintiff's claim unless the plaintiff can establish that such confusion somehow compromises its rights to the mark at issue.

■ The court notes that there may well be a likelihood of confusion in light of the obvious similarity of the marks and of the types of services provided by the respective restaurants run by the parties.[2] No finding in this regard is necessary, however, because the plaintiff has not established the boundaries of its pre–1978 trading area that the defendants allegedly have violated and, consequently, has failed to demonstrate that it is likely to succeed on the merits at trial.

Section 33 of The Lanham Trade–Mark Act provides in relevant part:

(b) If the right to use [a] registered mark has become incontestable ... the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified ... subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:

. . . .

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or

---

**2.** The court also notes, however, that the plaintiff previously maintained that the mark "UNO'S FAMILY RESTAURANT" did not infringe the mark "PIZZERIA UNO" when defendant Pizzeria Uno protested over the plaintiff's attempt to register the former mark in 1981. *See* Item 7 at Exhibit 12.

those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark ... *Provided, however,* That this defense or defect shall apply *only for the area* in which such continuous prior use is proved....

15 U.S.C.A. § 1115(b)(5) (1982) (latter emphasis added).[3] This section requires the plaintiff to establish "the extent of the trade area" in which it used the mark prior to the filing of the defendants' registration. *Thrifty Rent–A–Car System, Inc. v. Thrift Cars, Inc.,* 831 F.2d 1177, 1181 (1st Cir. 1987).

■ The court does not accept the defendants' position that, simply by virtue of its location in a different town, the plaintiff's East Aurora site represents an impermissible geographical expansion of the plaintiff's pre–1978 trading area. If, for example, a prior user of a mark such as the plaintiff operates an establishment abutting a town's geographical boundary, its trading area surely would not be limited solely because of the boundary; similarly, opening a new establishment just across the boundary surely would not necessarily constitute an improper expansion. *See Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 415–16, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916).

The problem for the plaintiff here, however, is that the extent of its pre–1978 trading area remains unclear. Although the plaintiff has offered evidence of the promotional and advertising efforts it has made both before and after 1978, it has not offered sufficient evidence of the effects of the pre–1978 advertising to demonstrate a pre–1978 trading area that included the defendants' planned mall location. *See Spartan Food Systems, Inc. v. HFS Corp.,* 813 F.2d 1279, 1283–84 (4th Cir.1987); *Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1397–1400 (3rd Cir.), *cert. denied,* 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985).

■ Attracting occasional or sporadic customers from a given area does not compel the conclusion that that area is encompassed within an applicant's trading area, *see Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d at 1400; *Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 929 (8th Cir.1967), but that is all the plaintiff has thus far established. For example, through an affidavit submitted in support of its application, the plaintiff asserts that its radio advertising has attracted "on a regular basis telephone and take out orders from Cheektowaga (668 telephone prefix exchange) and the Cheektowaga zip code (14225)." Item 3, Paul Affidavit at ¶ 14. In support of this assertion, the plaintiff has attached copies of six telephone order slips from its current West Seneca location covering a period of approximately fifteen days. *See* Item 3 at Exhibit O.[4] This evidence is not sufficient to establish that the plaintiff's present trading area includes the mall, let alone that its pre–1978 trading area included the mall. Based on the present record, copies of telephone listings and advertising used by the plaintiff, *see* Item 3 at Exhibit C, add little to the plaintiff's position.

Finally, the court notes that the balance of hardships tips decidedly in the defendants' favor in light of the construction expenses incurred by the defendants and the proximity of the planned opening date.

In short, the plaintiff has not established that it had a pre–1978 trading area that included the defendants' planned mall location. Its application must, therefore, be denied.

■ The defendants' application for an injunction fares no better. First, the parties agree that the central issue concerns use of the marks "UNO" and "UNO'S." Consequently, the court rejects the defendants' claim that the plaintiff abandoned any rights it may have had in the mark "UNO'S" simply by adopting the name "UNO'S FAMILY RESTAURANT" in West Seneca in 1984. *See* Item 6 at 18.

---

**3.** An amendment to this section will go into effect on November 16, 1989. *See* 15 U.S.C.A. § 1115(b)(5) (Supp.1989).

**4.** The year in which those orders were taken is not clear from the exhibit.

Second, the defendants have not established that the fundamental character of the services offered by the plaintiff in West Seneca changed when the plaintiff's present location in that town opened. Third, the defendants have failed to establish that the plaintiff's pre–1978 trading area did *not* include the defendants' planned mall location. The defendants thus have failed to establish that the plaintiff has not made "continuous prior use" of the mark "UNO'S" in the plaintiff's pre–1978 trading area. *See* 15 U.S.C.A. § 1115(b)(5). The defendants have also failed to establish that the opening of the plaintiff's East Aurora location constituted an impermissible geographical expansion beyond the plaintiff's pre–1978 trading area. Finally, the defendants have not even alleged that they will suffer irreparable harm unless an injunction issues.

The court emphasizes that it takes no position on the relative strength of the parties' positions concerning the merits of the plaintiff's underlying claims. This ruling simply holds that neither side has established that it is entitled to a preliminary injunction.

So ordered.