**ALL VIDEO, INC., a Michigan Corporation, Plaintiff,**

v.

**HOLLYWOOD ENTERTAINMENT CORPORATION, an Oregon Corporation, Defendant.**

**Civil Action No. 96–40157.**

United States District Court,
E.D. Michigan,
Southern Division.

June 18, 1996.

George R. Mosher, Mark A. Cantor, Maria Franek, Brooks & Kushman, Southfield, MI, for Plaintiff.

Michael A. Huget, Ann Arbor, MI, for Defendant.

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

GADOLA, District Judge.

Plaintiff is a company that owns several video stores in the Detroit area called Hollywood Video (hereinafter "Local Hollywood Video" stores).[1] Defendant is a company that owns video stores across the country called Hollywood Video (hereinafter "National Hollywood Video" stores).

In 1986, plaintiff opened two Local Hollywood Video stores in Detroit. In 1990, plaintiff opened Local Hollywood Video stores in East Pointe and Roseville. In 1991, plaintiff opened a Local Hollywood Video store in Clarkston.

In addition to the stores that plaintiff owns, it has sold licenses to other corporations, in which plaintiff has an ownership interest, to set up Local Hollywood Video franchises. Local Hollywood Video store franchises currently exist in several locations throughout the Detroit metropolitan area, including: Belleville, Flatrock, Brownstown Township, and Chesterfield Township. In total, there are currently thirteen Local Hollywood Video stores.

Defendant was incorporated in 1988. It traces its use of the service mark[2] "Holly-

---

1. Plaintiff was formerly called Hollywood Video. All Video Co. was created in August, 1989. All Video purchased all of Hollywood Video's business rights.

2. Hollywood Video is a service mark, rather than

wood Video" back to 1981, however, because it purchased a Wisconsin company that had been using that service mark since 1981. Defendant currently has about 250 stores across the nation. Defendant intends to establish many National Hollywood Video stores in Michigan.

On September 21, 1992, defendant applied for a service mark for the name "Hollywood Video Superstore." On February 25, 1993, defendant applied for a service mark for the name "Hollywood Video." These marks were issued on December 28, 1993 and August 9, 1994, respectively. Three of plaintiff's stores, located in Chesterfield Township, Brownstown Township, and on Seven Mile Road in Detroit, were established after September 21, 1992.

Defendant has opened National Hollywood Video stores in Ann Arbor, Chesterfield Township, and East Pointe and plans to open approximately fifteen more stores in the following year in the Detroit area. Defendant's East Pointe store is located about one mile away from plaintiff's East Pointe store. Defendant, however, has agreed to change the name of its East Pointe store to "Video Watch."

Plaintiff is currently seeking a preliminary injunction that would prevent defendant from operating any National Hollywood Video stores in the state of Michigan, or at least in southeast Michigan.

## II. Analysis

### A. Preliminary Injunction Standard

█ There are four factors which a district court should consider in deciding whether to exercise its discretion to grant a preliminary injunction:

(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction will harm others; and (4) whether the public interest would be served. A district court is re-

quired to make specific findings concerning each of the four factors, unless fewer are dispositive of the issue.

*International Longshoremen's Ass'n, AFL–CIO, Local Union No. 1937 v. Norfolk Southern Corp.,* 927 F.2d 900, 903 (6th Cir.1991). In balancing these four factors, the court should remember:

There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case than the issuing of an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages.

*Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18,* 471 F.2d 872, 876 (6th Cir.1972), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973) (citation omitted).

### B. Factor 1—Likelihood of Success

Plaintiff is seeking to exclude defendant from operating National Hollywood Video stores in Michigan.

15 U.S.C. § 1125(a) provides:

(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which

(A) is likely to cause confusion,[3] or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

shall be liable in civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiff argues that it has used the service mark "Hollywood Video" in Michigan before

---

a trademark, because it is associated with a service, video rentals, rather than a vendible commodity. *See Thrifty Rent–A–Car Sys., Inc. v. Thrift Cars, Inc.,* 831 F.2d 1177, 1180 n. 3 (1st Cir.1987). Service marks and trademarks are equally protected under the Lanham Act.

**3.** There is no question in this case that there is likely to be confusion between National Hollywood Video and Local Hollywood Video stores.

the defendant and that defendant's current use of the name Hollywood Video is injuring it irreparably.

Even though plaintiff was the first in Michigan to use the service mark at issue, defendant used the mark in Wisconsin before plaintiff used it in Michigan. This makes defendant the senior user of the service mark. Further, defendant obtained federal registration of the mark. This registration gives the defendant several benefits. 15 U.S.C. § 1057(c) provides:

> Contingent on the registration of a mark ... the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing—
> (1) has used the mark....

■ In addition to constructive use of the mark, federal registration serves as constructive notice of the registrant's claim of ownership to the mark. 15 U.S.C. § 1072. "After registration, there can be no new "innocent" users, and even an innocent prior user cannot expand the area of its use, because Lanham Act registration puts all would-be users of the mark ... on constructive notice of the mark." *Champions Golf Club, Inc. v. Champions Golf Club*, 78 F.3d 1111, 1123 (6th Cir.1996).

■ In spite of defendant's status as senior user of the mark and defendant's registration of the mark, defendant may not exercise its service mark against junior users who, (1) without knowledge of defendant's earlier use of the mark, (2) adopted the mark before the date that defendant applied for the federal registration, and (3) have since continuously used the mark. 15 U.S.C. § 1115(b)(5). This defense is limited, however, "only for the area in which such continuous prior use is proved...." *Id.; Champions*, 78 F.3d at 1123–24.[4] Thus, a "pre-existing good faith user's rights are frozen to the geographical location where the user has established a market penetration as of the date of registration."[5] *Thrifty Rent–A–Car Sys., Inc. v. Thrift Cars, Inc.*, 831 F.2d 1177, 1181 (1st Cir.1987); *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1191 n. 6 (6th Cir.1988). This is meant to give limited protection to those who innocently adopt service marks without realizing that someone else in a different locality had already been using those marks.

The issues in this case, then, are: (1) whether plaintiff's adoption of the service mark was without notice of defendant's, or any, prior use of the mark; (2) whether plaintiff's current stores were in existence on September 21, 1992, when defendant applied for registration of its service mark; and (3) what was the geographical trading area for these stores as of September 21, 1992.

### 1. Plaintiff's Notice of Defendant's Prior Use of the Mark

Plaintiff has filed an affidavit stating that it was unaware of defendant's use of the mark when it adopted the name Hollywood Video. Based on this credible statement, it is likely that plaintiff will be able to prove at trial that it was not aware of defendant's prior use of "Hollywood Video" when it adopted that service mark for its business.

### 2. Plaintiff's Continuous Use of the Mark

■ Only plaintiff's stores that are currently in existence and that were in existence

---

4. 15 U.S.C. § 1115(b) provides, in part:
   ... [T]he right to use the registered mark shall ... be subject to the following defenses or defects:
   ....
   (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 7(c) [15 U.S.C. § 1057(c)] ... Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved.

5. Because there has been a change in the statutory language of § 1115(b)(5), the pre-existing good faith user's rights are frozen as of the date of the application for registration, not the date of the registration, for those applications filed on or after November 16, 1989. *See* J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 26.18[2][a] and n. 36.

before September 21, 1992 are protected under the Lanham Act. This is because defendant filed an application with the PTO to register "Hollywood Video Superstore" as a service mark on September 21, 1992.[6] Therefore, plaintiff's three stores located in Chesterfield Township, Brownstown Township, and on Seven Mile Road in Detroit, which were established after the Lanham Act provided defendant with constructive use of the Hollywood Video mark across the country, are not protected under the Lanham Act. This court holds that plaintiff does not have a high likelihood of proving at trial that these three stores are entitled to any protection from defendant. Plaintiff's other stores, however, were in existence prior to September 21, 1992 and could be entitled to protection under 15 U.S.C. § 1115(b)(5).

### 3. Trade Area for Each Protected Store

Plaintiff can only exclude defendant from the areas in which plaintiff's stores *actually* used its mark on September 21, 1992. *Champions,* 78 F.3d at 1123. It is obvious, then, that at trial plaintiff cannot receive an injunction covering the entire state of Michigan, as it requests.[7] This is because plaintiff will not be able to prove at trial that it used its mark throughout the state of Michigan as of September 21, 1992.

▮▮▮ The touchstone of the determination of a trade area is likelihood of confusion. A trade area is the area in which people have associated a service mark with a particular business such that they would likely be confused by someone else's unauthorized use of the mark. *See Spartan Food Sys., Inc. v. HFS Corp.,* 813 F.2d 1279 (4th Cir.1987). There can be no likelihood of confusion if people in an area do not generally know of a product or service. *See Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 415–16, 36 S.Ct. 357, 361–62, 60 L.Ed. 713 (1916) ("Since it is the trade, and not the mark, that is to be protected, a trade-mark acknowledges no territorial boundaries of municipalities or states or nations, but extends to every market where the trader's goods have become known and identified by his use of the mark.") Thus, there must be more than *de minimis* sales in an area for that area to be protected under the prior user exception. *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.,* 921 F.2d 467, 473 (3rd Cir. 1990). There must be sufficient sales activity in an area to justify a finding that substantial numbers of people in that area have associated the service mark with that particular store. Advertising in an area, while a factor to be considered in determining trade area, *Natural Footwear, Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1397 (3rd Cir.1985), is not enough, without more, to bring that area within the trade area of a store. *Natural Footwear* proposes four factors to be considered in defining trade area: "(1) the volume of sales of the trademarked product; (2) the growth trends (both positive and negative) in the area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." *Natural Footwear,* 760 F.2d at 1398–99. *See Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 929 (8th Cir.1967). In support of its argument that its trade area encompasses all of southeast Michigan,[8] plaintiff adduces evidence of sales of $10,000,000 in southeast Michigan. While $10,000,000 in sales is substantial, it is unclear from which geographical locations

---

6. At oral argument, plaintiff argued that the Lanham Act protects its stores established before the date of defendant's application for registration of "Hollywood Video," not just those stores established before the date of defendant's application for registration of "Hollywood Video Superstore." This argument is without merit. Defendant's registration for the mark "Hollywood Video Superstore" entitles it to protection from those who would use the mark "Hollywood Video." There is a large likelihood of confusion between video stores entitled "Hollywood Video Superstore" and stores entitled "Hollywood Video."

7. At oral argument, plaintiff argued that it would likely be able to invalidate defendant's federal service mark registration, which would entitle it to an injunction covering the entire state. Simply put, the record does not support a holding that plaintiff has a high probability of invalidating defendant's federal service marks.

8. Specifically, that it encompasses Wayne, Macomb, Oakland, and Washtenaw Counties.

these sales occurred. Further, this sales number includes sales made after 1992, including the three stores that are not entitled to protection under § 1115(b)(5). The relevant consideration here is the market penetration as of September 21, 1992. A total sales figure of $10,000,000, without a more detailed breakdown of when and where these sales occurred, is not of much help to this court and cannot support any "broad conclusions." *Natural Footwear*, 760 F.2d at 1399.

With regard to advertising, plaintiff's affidavit states that "[s]ince at least as early as 1986, All Video, its predecessor and its licensees have continuously advertised and promoted its 'Hollywood Video' video rental services primarily through print media and on radio." This, if true, helps plaintiff's argument, but, without evidence concerning the effects of this advertising on the market, is of limited usefulness. *Spartan*, 813 F.2d at 1283–84.

With regard to the growth trends of the market, there is no information in the record concerning whether plaintiff's market share is increasing or decreasing relative to other video sellers in southeast Michigan. Further, this court has no evidence concerning the annual growth in sales for plaintiff. The court does note, however, that plaintiff has been adding stores to its chain, which is some indication of a growing market. However, other chains may be growing even faster than plaintiff, meaning that plaintiff could be losing market share. Also, this increase in the number of stores could be an indication that the trade areas of video stores are decreasing, requiring chains to establish more stores to maintain sales levels.

Lastly, there has been no evidence concerning plaintiff's market share in the various areas in southeast Michigan. Perhaps one in ten people use or recognize plaintiff's stores, perhaps one in 100,000 do. There may be many people renting a few videos from plaintiff or a few people renting many videos. This court can draw no inferences in favor of plaintiff with regard to its market share.

The defendant has submitted evidence that the trade area of an average video store in an urban/dense suburban area is a two mile radius around the store. This is based on studies that defendant has done in different markets. It is undisputed that defendant has not done a survey of the Detroit metropolitan area. Defendant also adduces evidence that several video store chains in the greater Detroit area have placed their franchises about four miles apart. This would suggest a trade area for each store of two miles.

Considering that the evidentiary burden is on the movant, this court does not believe that plaintiff has demonstrated a high probability of being able to prove at trial a trade area greater than the two miles around each store that is conceded by defendant. This sparse record cannot support any other conclusion.

This court does hold, however, that plaintiff has a high likelihood of being able to demonstrate a trade area of two miles around each store. Thus, plaintiff has a high probability of being able to obtain a permanent injunction precluding defendant from operating National Hollywood Video stores whose trade areas would overlap with the trade areas of plaintiff's protected stores. This means that defendant would not be able to operate a National Hollywood Video store within four miles [9] of any of plaintiff's Local Hollywood Video stores, with the exception of the three stores in Chesterfield Township, Brownstown Township, and on Seven Mile Road in Detroit.

Plaintiff argues that such a limited injunction eviscerates the Lanham Act's strong policy in favor of eliminating customer confusion. It argues that radio and print advertising by both plaintiff and defendant will cause untrammeled confusion within plaintiff's protected trade areas. Clearly, there will be some confusion caused by radio and print advertising. The court does not believe that the advertising will wreak the hav-

---

**9.** If each video store has a trade area of two miles, then stores must be placed four miles apart to prevent the trade areas from overlapping.

oc predicted by plaintiff, however.[10]

In any event, this court agrees with defendant that Congress recognized and accepted that some level of confusion would inevitably result from allowing a limited defense for junior users such as that provided by § 1115. Congress, to promote national registration and protection of marks, limited the defense to those areas of *continuous use,* not those areas in which anybody has ever heard of the junior user's product. In order to eliminate all confusion, the good faith user's defense would not be limited at all and would greatly weaken the national protection of marks, a prime purpose of the Lanham Act. *See Thrifty Rent–A–Car,* 831 F.2d at 1180, 1182, 1184. "While we recognize that some consumer confusion may result because there will be some overlap in advertising, the Lanham Act does not require the complete elimination of all confusion." *Id.,* at 1184.

## C. Factor 2—Irreparable Injury

If defendant were to expand into the trade area of one of plaintiff's stores that has been operating continuously since September 21, 1992, then plaintiff would be irreparably harmed by customer confusion. *See Wynn Oil Co. v. American Way Service Corp.,* 943 F.2d 595, 606 (6th Cir.1991). During the next twelve months, defendant intends to establish approximately fifteen new stores in southeast Michigan. Accordingly, this court believes that plaintiff faces irreparable injury to its protectable trade areas during the course of these proceedings, supporting the issuance of a limited injunction to protect these areas.

## D. Factor 3—Whether the Injunction Will Harm Others

Granting an injunction limited to precluding defendant from operating stores whose trade areas overlap with plaintiff's protected trade areas would not harm others. Such an injunction will not harm defendant because defendant can still open stores very close to plaintiff's protected stores under the name of Video Watch. Defendant would also be able to open National Hollywood Video stores farther away from plaintiff's protected stores.

Such an injunction would not harm consumers either. As discussed previously, this court believes that the issuance of an injunction will serve to reduce confusion to an acceptable level.

## E. Factor 4—Whether the Public Interest Will Be Served

If an injunction is limited to keeping defendant out of plaintiff's trade areas, then the public interest will be served. The public interest in preventing consumer confusion and unfair business practices is served because there will not be two Hollywood Video stores under different ownership with overlapping trade areas. The public interest in protecting federal service marks will be served because defendant is only prevented from exercising its service mark in a few discrete areas.

## F. Conclusion

After weighing these factors, this court holds that plaintiff has demonstrated a need for a limited preliminary injunction. This court believes that plaintiff will be able to demonstrate at trial that plaintiff is entitled to the defense of 15 U.S.C. § 1115(b)(5) with regard to all of its stores, except the three located in Chesterfield Township, Brownstown Township, and on Seven Mile Road in Detroit, which were established after September 21, 1992. The court is less optimistic, at least based on the current record, about plaintiff's ability to prove a trade area greater than two miles around each store.[11]

### ORDER

Therefore, it is hereby **ORDERED** that defendant be **ENJOINED** from operating

---

**10.** It is in each party's best interests to try to not advertise for each other. The costs of advertising will provide incentive for each party to attempt to differentiate its stores, which will serve to limit confusion.

**11.** The court stresses that plaintiff may be able to prove at trial a greater trade area, justifying the issuance of a broader permanent injunction against defendant. Defendant should consider this when it selects sites for new stores during the course of these proceedings.

"Hollywood Video" stores within four miles of any of plaintiff's "Hollywood Video" stores, with the exception of plaintiff's three stores located in Chesterfield Township, Brownstown Township, and on Seven Mile Road in Detroit, which were established after September 21, 1992.

Additionally, in order to help ensure that consumer confusion is limited to the extent feasible, it is hereby further **ORDERED** that defendant may freely advertise its stores on the radio and in newspapers, but is **ENJOINED** from using direct mailing to send advertisements for its "Hollywood Video" stores to people located within two miles of any of plaintiff's "Hollywood Video" stores, with the exception of plaintiff's three stores located in Chesterfield Township, Brownstown Township, and on Seven Mile Road in Detroit, which were established after September 21, 1992.

**SO ORDERED.**