UNIVERSAL NUTRITION
CORPORATION,
Plaintiff,

v.

CARBOLITE FOODS, INC. and
Big Bear Natural Foods,
Inc., Defendants.

No. CIV. 03–3265(GEB).

United States District Court,
D. New Jersey.

July 21, 2004.

Richard B. Goldsmith, Esquire, Yankowitz, Goldsmith & Sayers, P.A. Livingston, NJ, Paul Fields, Esquire, Amy J. Benjamin, Esquire, Heather C. Wilde, Esquire, Darby & Darby P.C., New York, NY, for Plaintiff Universal Nutrition Corporation.

Karen Confoy, Esquire, Sterns & Weinroth, PC, Trenton, NJ, Daniel J. Leuders, Esquire, Holiday W. Banta, Esquire, John L. Roberts, Esquire, Woodard, Emhardt, Moriarty, McNett & Henry LLP, Indianapolis, IN, for Carbolite Foods, Inc. and Big Bear Natural Foods, Inc.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court upon Carbolite Foods, Inc. ("Carbolite") and Big Bear Natural Foods, Inc. ("Big Bear," collectively with Carbolite, "Defendants") motion for summary judgment and Plaintiff Universal Nutrition Corp.'s ("Universal" or "Plaintiff") crossmotion for summary judgment, pursuant to Fed.R.Civ.P. 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and having heard oral argument from counsel on April 19, 2004, and for the

reasons discussed below, will grant Defendants' motion in part and will deny Plaintiff's motion.

## I. BACKGROUND

This action arises from, *inter alia,* Universal's claim of trademark infringement and false designation of origin pursuant to 15 U.S.C. § 1051 *et seq.* against Carbolite and Big Bear. Compl. ¶ 1. Universal's claim is based on "Carbolites's use of the mark CARBORITE as applied to low carbohydrate dietary supplements and based on Big Bear's sale and promotion of those products." *Id.* Defendant Carbolite has asserted counterclaims against Universal for trademark infringement and false designation of origin and seeks cancellation of Universal's CARB–RITE trademark registration number.

### A. FACTS

Universal produces and sells a variety of low-carbohydrate products, including chocolate bars. Plaintiff's L. Civ. R. 56.1 Statement ("Pl. R. 56.1 Stmt.") ¶¶ 7, 9. "Defendant Carbolite sells an assortment of low carbohydrate dietary supplements including candy, snacks, crackers, shakes and nutrition bars." Complaint ¶ 13. Defendant Big Bear sells and markets products bearing the CARBORITE mark through its New Jersey retail establishment and its website. Answer ¶¶ 14, 20.

There is no genuine dispute as to the following facts:

- On or about, July 28, 2001; August 6, 2001; and August 14, 2001, Universal shipped orders which included chocolate bars marked with the CARB–RITE mark to three of its distributors: American Nutritional, Universal Europe BV, and Brazcom Services ("Brazcom"), respectively.[1] Pl. R. 56.1 Stmt. ¶¶ 11, 16, 19.

- On August 20, 2001, Carbolite filed its intent-to-use application to register the CARBORITE mark for use in connection with "soft serve ice cream, bake mixes, namely, cookies, waffle mixes, cake mixes, pizza crust mixes and bread mixes, shake mixes, cappucino drink mixes, mousses, namely, flavor sweetened gelatin desserts, cheesecakes, chocolate bars, candy and natural sweeteners" in International Class 30 (Staple Foods). Affidavit of James T. Walsh ("Walsh Aff.") ¶ 12.

- On October 18, 2001, Universal filed its intent-to-use application to register the CARB–RITE mark for "food supplements; nutritional supplements; dietary supplements and nutritional bars for low carb dieters," in International Class 5 (Pharmaceuticals). Walsh Aff. ¶ 11.

- On June 27, 2002, Universal filed its Statement of Use reciting November 1, 2001 as its first date of actual use. Pl. R. 56.1 Stmt. ¶ 28.

- On October 22, 2002, Universal's registration for CARB–RITE was issued. Walsh Aff. ¶ 11.

- On March 24, 2003, Carbolite began selling products with CARBORITE mark. Pl. R. 56.1 Stmt. ¶ 35.

- On April 28, 2003, Carbolite filed its Statement of Use. Walsh Aff. ¶ 12.

- On September 2, 2003, Carbolite's registration for CARBORITE was issued. Walsh Aff. ¶ 12.

Finally, there is no dispute that the parties' goods are substantially similar and that CARBORITE is confusingly similar to CARB–RITE. Pl. R. 56.1 Stmt. ¶¶ 42–43.

---

1. Universal's CARB–RITE mark, as it is referred to throughout this Memorandum Opin- ion appears as "CarbRite" on Universal's products.

### B. PROCEDURAL HISTORY

On July 7, 2003 Universal commenced the instant action against Carbolite and Big Bear. On December 15, 2003, Defendants filed their Answer, Defenses and Counterclaims, with only Carbolite asserting counterclaims against Universal.

A Scheduling Order was entered by Magistrate Judge Bongiovanni on January 26, 2004. Initial disclosures were to have been exchanged between the parties by February 23, 2004. The Court is not aware of any discovery having been conducted in this case.

On or about January 31, 2004, Universal moved to strike portions of defendant Carbolite's counterclaims; on April 2, 2004, Judge Bongiovanni denied Universal's motion. A motion for reconsideration of Judge Bongiovanni's decision was filed on April 18, 2004. As of this date, that motion is pending.

Presently before this Court are the parties' cross-motions for summary judgment.

## II. DISCUSSION

### A. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n. 3 (3d Cir.1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir.1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either par-

ty." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e).

The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255–56, 106 S.Ct. 2505.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

**530**

Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented ... by depositions, answers to interrogatories, or further affidavits," *id.,* "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586 n. 12, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 ("[B]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion ... the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit."); *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992) ("To raise a genuine issue of material fact ... the [nonmoving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the "mere scintilla"

threshold.), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

### B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment based upon the earlier filing date of their application for registration of the CARBORITE mark and thus argue that the CARBORITE mark has priority over Universal's CARB–RITE mark based upon its constructive use pursuant to 15 U.S.C. § 1057(c).[2] In addition, they argue that because there is no dispute as to there being a likelihood of confusion between the CARBORITE mark and Universal's CARB–RITE mark, they are entitled to summary judgment. Defendants also contend that the different classifications of the registrations assigned by the United States Patent and Trademark Office ("PTO") is irrelevant.

Universal argues first that Carbolite's registration is invalid and thus could not confer priority rights. In the alternative, Universal contends that even if Carbolite's registration is valid, any priority of the CARBORITE mark used with products in the PTO's International Class 30 cannot apply to Universal's products, because the registration for the CARB–RITE mark is in International Class 5.

■ To establish a claim for trademark infringement, Carbolite must prove that: "(1) its mark is valid and legally protectable; (2) it owns the mark; and (3) [Universal's] use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or

---

**2.** In their Combined Reply to Plaintiff's Response to Carbolite's Motion for Summary Judgment and Response to Plaintiff's Cross–Motion for Summary Judgment ("Defs. Reply & Response"), Defendants have converted their motion to one for partial summary judgment based upon the issue of fact raised by Universal's counterclaim as to the validity of

Carbolite's registration alleging that Carbolite committed fraud on the PTO. Defs. Reply & Response, pp. 1–2. Thus, Defendants ask this Court to hold that the use of the CARB–RITE mark by Universal constitutes infringement unless Universal can show by clear and convincing evidence that Carbolite committed fraud on the PTO. *Id.,* pp. 20–21.

services." *Commerce Nat'l Ins. Servs., Inc., v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 437 (3d Cir.2000) (citing *Opticians Ass'n of Am. v. Independent Opticians of Am.,* 920 F.2d 187, 192 (3d Cir. 1990)); *see also Fisons Horticulture, Inc. v. Vigoro Indus. Inc.,* 30 F.3d 466, 472 (3d Cir.1994).

Carbolite contends that the date on which it filed the application for the CARBORITE registration was prior to Universal's use or application for registration of the CARB–RITE mark and thus, pursuant to 15 U.S.C. § 1057(c), it has priority rights based upon constructive use of the CARBORITE mark.[3] However, Universal contends that there is a genuine issue of material fact with respect to the validity of Carbolite's registration. Fed.R.Civ.P. 56(f) Declaration of Amy J. Benjamin ("Benjamin 56(f) Dec.") ¶¶ 8–9. Universal contends Carbolite's registration is subject to cancellation if either: (1) Carbolite did not have the requisite bone fide intent to use the CARBORITE mark on the goods identified in the application at the time the application was filed or (2) that Carbolite's April 28, 2003 Statement of Use was false because it was not in fact using the mark with all of the goods listed therein. Benjamin 56(f) Dec., ¶ 8. Universal contends that discovery is needed in order to obtain evidence in support of its challenges to the validity of Carbolite's registration. Benjamin 56(f) Dec., ¶¶ 10–11.

 When an affirmative defense challenging the validity of a registration based on the lack of a bona fide intent to use a mark for the goods identified in an application is asserted, the denial of summary judgment is proper. *Salacuse v. Ginger Spirits, Inc.,* 44 U.S.P.Q.2d 1415 (Trademark Tr. & App. Bd.1997). In addition, where a registrant makes a false statement as to the use of the mark in connection with the goods or services listed in its registration, cancellation of the mark is proper. *Medinol Ltd. v. Nwueo Vasx, Inc.,* 67 U.S.P.Q.2d 1205, 1208 (Trademark Tr. & App. Bd.2003) (granting summary judgment in favor petitioner based upon respondent's fraud on PTO in procurement of registration); *General Car & Truck Leasing Sys., Inc. v. General Rent–A–Car Inc.,* 17 U.S.P.Q.2d 1398, 1401 (S.D.Fla.1990) (granting partial summary judgment in favor of defendant based upon plaintiff's fraud on the PTO). Here, Universal has raised a question of material fact as to the validity of Carbolite's registration due to possible false statements as to the use of the mark on the products listed in its registration.

Carbolite's federal registration of the CARBORITE mark is prima facie evidence of its ownership of the mark. 15 U.S.C. § 1057(b), 1115(a). Universal does not dispute Carbolite's ownership of the CARBORITE mark. Additionally, Universal, by way of its Complaint, alleges and thus concedes a likelihood of confusion between the two marks. Therefore, the only remaining issue is whether the CARBORITE registration is valid in light of Universal's claim that Carbolite committed fraud against the PTO.

 The parties also dispute the relevance of the PTO's classification system

---

**3.** 15 U.S.C. § 1057(c) provides:

Application to register mark considered constructive use. Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing—(1) has used the mark; (2) has filed an application to register the mark which is pending or has resulted in registration of the mark . . .

for registrations. In trademark infringement cases, the PTO's "classification of particular goods is immaterial." *In re Knapp–Monarch Co.*, 49 C.C.P.A. 779, 296 F.2d 230, 231 (Cust. & Pat.App.1961). Plaintiff's CARB–RITE mark is registered in International Class 5 (Pharmaceuticals) and Carbolites' CARBORITE mark is registered in International Class 30 (Staple Foods). Both parties use their marks in connection with their low-carbohydrate products, including, *inter alia*, chocolate bars.

■ A party seeking relief under the Lanham Act based upon its federal registration is entitled to do so with respect to only the products listed in its registration. *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396–97 (3d Cir. 1985) (stating also that trademark rights for use with respect to related products, beyond those recited on a registration, are considered under the common law). The CARBORITE registration lists chocolate bars among the products for which the mark is used. Universal uses the CARB–RITE mark in the sale and production of its chocolate bars. Thus, regardless of the PTO classification, the CARBORITE registration, if it has priority, would preclude the use of CARB–RITE by Universal in connection with chocolate bars.

■ The classifications in a trademark registration are "only for the administrative convenience of the PTO and neither limit nor extend the scope of protection of the registered mark" and "the fact that the infringer's goods fall within a different classification from the registrant's goods is not determinative of a likelihood of confusion." *Jews For Jesus v. Brodsky*, 993 F.Supp. 282, 299–301 (D.N.J.1998) (quoting 3 McCarthy on Trademarks, § 24:66, at 24–115). In that case, this Court held that

the classification of the registrations was irrelevant because the category of plaintiff's and defendant's goods were identical. *Id.* at 300. Similarly, here, both parties are seeking relief based upon the use of their marks in connection with chocolate bars. Thus, this Court finds the different classifications of the registrations to be irrelevant and of no consequence. Where the parties use their marks in connection with admittedly identical products, the PTO's classification system allowing the use of one mark with products considered to be staple foods rather than dietary or nutritional supplements poses no bar for a claim of trademark infringement.

Because the parties have not yet completed discovery and Carbolite is in possession of facts and/or evidence pertaining to Universal's challenges to the validity of the CARBORITE registration, summary judgment cannot be granted in defendants' favor at this time. *Sames v. Gable*, 732 F.2d 49, 51–52 (3d Cir.1984). Thus, in light of the genuine issue of material fact raised by Universal and the need for discovery on this issue only, the Court will grant defendants' motion for summary judgment in part.

### C. Universal's Motion for Summary Judgment

Plaintiff Universal seeks summary judgment based upon the priority of its CARB–RITE mark. More specifically, Universal argues that because the date of its actual first use of the CARB–RITE mark is earlier than the date of Carbolite's application for registration, it has superior rights. The date of actual first use that Universal now submits is different from—and earlier than—the date listed on the application for registration and/or Statement ⸱ of Use which was November 1, 2001.[4] Thus, Universal asserts that it is the senior user and

---

4. The Court notes that Universal states, without any support or evidence, that its use of the CARB–RITE mark is not limited to the product shipments made in July and August 2001

has a common law right based upon priority of use.

■ Because Universal now seeks to prove a date of first use earlier than the date identified in its application for registration, it must do so by clear and convincing evidence. *Hydro–Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1473 (Fed.Cir.1987). Universal submits that the proper and actual date of first use that should have been alleged in its application for registration and Statement of Use is July, 28, 2001. *See generally* Declaration of Michael Rockoff. In support of this assertion, Universal offers evidence of three shipments made to its customers who are distributors of Universal's CARB–RITE line of products. These shipments were made on July 28, 2001; August 6, 2001; and August 14, 2001. Declaration of Tim Tantum ("Tantum Dec.") ¶¶ 9, 15, 19; Exh. 7, 8, 11, 13.

■ In order to establish trademark rights on the basis of use, a party must establish sufficient market penetration. There is a four-factor test "to determine whether the market penetration of a trademark in an area is sufficient to warrant protection: (1) the volume of sales of the trademarked product; (2) the growth trends (both positive and negative) in the

area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 317 (3d Cir.1999) (quoting *Natural Footwear*, 760 F.2d at 1398–99).[5]

Universal asserts that on July 28, 2001; August 6, 2001; and August 14, 2001, it sent shipments of its products which included chocolate bars marked with the CARB–RITE mark to three different distributors: American Nutritional, Universal Europe BV, and Brazcom, respectively. Based upon its use of the CARB–RITE mark in connection with these sales to its distributors, Universal argues that its trademark rights have priority over those of Carbolite. The shipments to American Nutritional and Brazcom were sent to Florida. Tantum Dec., Exh. 8, 13. The shipment to Universal Europe BV was sent to the Netherlands. Tantum Dec., Exh 11.

■ In applying the four-factor test, the Court will consider only the two sales to the Florida distributors because the sale of goods to a non-U.S. distributor does not constitute "use in commerce." 15 U.S.C. § 1127.[6] It does not appear that the sales

and those are only "identified as exemplary shipments." Plaintiff's Reply Memorandum of Law, p. 2; *see also* Reply Declaration of Michael Rockoff, ¶ 8. With nothing offered in support of this assertion, the Court can only consider the July and August 2001 shipments to determine if Universal's claimed earlier actual use is sufficient to establish priority rights in the CARB–RITE mark.

5. The facts of this case are very similar to those in *Lucent*, where plaintiff argued that it had common law rights in a mark based upon its usage of that mark before defendant filed an intent-to-use application. Plaintiff in *Lucent* also alleged that defendant did not act in good faith in its adoption and usage of the mark. Both parties in that case asserted rights in the same exact mark, "LUCENT."

6. Plaintiff erroneously states that commerce between the U.S. and a foreign country is "use in commerce," however the statutory definition so provides specifically in connection with the use of a mark for services, not in connection with the use of a mark on goods. *See* 15 U.S.C. § 1127. The shipment to Universal Europe BV consisted of 24 boxes of chocolate bars bearing the CARB–RITE mark. Tantum Dec., Exh. 11. Even if the Court were to consider this shipment in applying the market penetration test, the shipment of 24 boxes to a distributor located in the Netherlands does not alter the Court's conclusion that Universal did not have more than a *de minimis* volume of sales in the relevant time period.

to the two Florida distributors are sufficient to satisfy the first factor. On July 28, 2001, Universal sent 48 boxes of its diet chocolate bars bearing the CARB–RITE mark to American Nutritional. On August 14, 2001, Universal sent 72 boxes of its diet chocolate bars bearing the CARB–RITE mark to Brazcom.

█ Universal has not provided a dollar amount for the 120 boxes that were sent to the two Florida distributors in July and August of 2001. Defendants have provided some information as to a possible dollar amount for the two sales. At present, boxes of Universal's chocolate bars are available for approximately $25.00 for a box of twelve chocolate bars or $40.00 for a box of 20 chocolate bars. Declaration of Roeland Polet, ¶ 5, Exh. B. Thus, Defendants assert that Universal sold a maximum of 2,400 chocolate bars to American Nutritional and Brazcom with an estimated retail value of $4,800.

The Third Circuit has held that the volume of sales must be more than *de minimis*. *Lucent*, 186 F.3d at 317 (citing *Natural Footwear*, 760 F.2d at 1400 which found *de minimis* clothing sales of less than $5,000, and a maximum 50 customers per state for two years). In the instant case, Universal relies on the two shipments it sent to American Nutritional and Brazcom during the course of approximately four weeks. Universal has not offered any evidence as to the dollar value of the products shipped, nor has it presented any information as to additional sales of its CARB–RITE chocolate bars prior to Au-

gust 20, 2001. *See supra*, note 5. Therefore, the Court finds that Universal has not shown that its volume of sales is sufficient to satisfy the first factor of the test for market penetration.

Even if the Court were to assume that Plaintiff established more than a *de minimis* volume of sales, it has nonetheless failed to establish the three remaining factors to show market penetration.[7] Universal's evidence is limited to the sales made to the three distributors, and the Court is only considering the shipments made to the Florida distributors. Therefore, the Court, here, as in *Lucent*, cannot find and review any growth trends in the area. Moreover, Plaintiff has failed to offer any evidence as to the sale of its product to consumers before August 20, 2001.

Thus, there is no triable issue of fact as to Plaintiff's motion for summary judgment. Moreover, the Court finds that Universal, as a matter of law, does not have a common law trademark right based upon its use of the CARB–RITE mark prior to Carbolite's purported "constructive use;" its use has failed to satisfy the four-factor test for market penetration. Therefore, the Court will deny Plaintiff's motion.

### III. *CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and Plaintiff's motion for summary judgment is denied. An appropriate form of order accompanying the original Memo-

---

7. Universal states that it "has not yet had the opportunity to show evidence of its marketing efforts, growth trends or the ratio of actual purchasers to potential customers." Plaintiff's Reply Memorandum, p. 11 (citing Reply Declaration of Michael Rockoff, ¶¶ 10–11). Plaintiff's assertion fails to raise an issue of fact and only casts doubt on its own position since it has failed to come forward with any supporting evidence in any one of its three

briefs or supporting papers on these cross-motions for summary judgment. Thus, it is the Court's view that Plaintiff has had ample opportunity to present evidence in support of its position. Plaintiff is in possession of this information and therefore no discovery is needed and the Court finds that Plaintiff has simply failed to come forward with anything to substantiate its contentions.

randum Opinion was signed by this Court on June 4, 2004 and filed on June 7, 2004.[8]

---

8. The original Memorandum Opinion has been revised this date for publication purposes and is otherwise substantively identical to this Memorandum Opinion.