**DORPAN, S.L., Plaintiff,**

v.

**HOTEL MELIA, INC. et al., Defendants.**

**Hotel Melia, Inc. et al., Plaintiff,**

v.

**Dorpan, S.L., et al., Defendants.**

Civil Nos. 09–1138 (GAG), 09–1188(GAG).

United States District Court, D. Puerto Rico.

March 31, 2012.

Federico Calaf–Legrand, Reichard & Calaf, Angel E. Rotger–Sabat, Maymi, Rivera & Rotger–Sabat, San Juan, PR, for Plaintiff/Defendants.

Jairo A. Mellado–Villarreal, Roxana Aquino–Segarra, Mellado & Mellado Villareal, San Juan, PR, Yadyra Manfredy–Ramos, Manfredy & Manfredy CSP, Ponce, PR, Liza Maria Delgado–Gonzalez, Mellado & Mellado Villareal, Caguas, PR, for Defendants.

### OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

On November 22, 2008, Hotel Meliá, Inc. ("HMI") filed suit against Dorpan, S.L. ("Dorpan"), Sol Meliá, S.A., ("Sol Meliá") and Desarrolladora del Norte, S. en C., S.E. ("Desarrolladora") (collectively "DSD") in Court of First Instance in Ponce, Puerto Rico. (*See* Civil No. 09–1188, Docket No. 1–1.) HMI alleged it was entitled to sole use of the term "Meliá"[1] in relation to the hotel industry on the island of Puerto Rico. (*See id.*) On February 27, 2009, DSD removed the case to federal court. (*See* Civil No. 09–1188, Docket No. 1.) On February 12, 2009, Dorpan filed a complaint against HMI seeking declaratory judgment for the use of the term "Gran Meliá" to refer to its hotel located in Río Grande. (*See* Civil No. 09–1138, Docket No. 1.) These two actions were consolidated on March 9, 2009. (*See* Civil No. 09–1188, Docket No. 5.) Currently before the court is Dorpan's motion for summary judgment seeking enforcement of its feder-

---

1. The English translation of Meliá is a type of plant, shrub or tree that has leaves flowers and drupe fruit. (*See* Docket No. 49–30.) Also, Meliá can be a last name as it is for HMI.

al trademarks (Docket No. 44) and HMI's motion for partial summary judgment seeking to bar DSD's suit based on issue and claim preclusion (Docket No. 47). After reviewing the parties' submissions and applicable law, the court **GRANTS** DSD's motion for summary judgment (Docket No. 44) and **DENIES** HMI's partial motion for summary judgment (Docket No. 47).

## I. Factual and Procedural Background

### A. SOL MELIA

Sol Meliá is a public limited Spanish company with offices at Gremio Toneleros 24, Palma de Mallorca, Baleares, Spain. (*See* Docket No. 45 at ¶ 1.) Sol Meliá was organized on June 24, 1986 under the name of Investman, S.A. (*See id.* at ¶ 2.) Sol Meliá, its subsidiaries and affiliate companies are engaged in the management and operation of owned or rented hotels and vacation clubs. (*See id.* at ¶ 3.) Sol Meliá is the largest hotel chain in Spain, the third largest in Europe, and the twelfth largest in the world. (*See id.* at ¶ 4.) The beginnings of Sol Meliá date back to the mid1950's, when Gabriel Escarrer Juliá founded Hoteles Mallorquines, S.A. (*See id.* at ¶ 7.) Hoteles Mallorquines S.A. was later acquired by Sol Meliá.

### B. DORPAN

Dorpan is a Spanish company organized on or about July 31, 1991. (*See* Docket No. 45 at ¶¶ 13–14.) Dorpan's principal business activity is to own, keep and license to Sol Meliá or Sol Meliá's subsidiaries and affiliates the trademark/service mark portfolio that the Sol Meliá hotel conglomerate uses worldwide. (*See* Docket No. 45 at ¶ 15.) Dorpan is a subsidiary of Sol Meliá and acquired the trademark rights to the Meliá name from Organización Meliá S.A.

### C. DESARROLLADORA

Desarrolladora is a special partnership formed, organized and doing business in accordance with the laws of Puerto Rico. (*See* Docket No. 45 at ¶ 21.) Desarrolladora is a Sol Meliá company that owns a luxury resort hotel at Coco Beach, Río Grande, Puerto Rico and operates under the Gran Meliá service mark. (*See* Docket No. 45 at ¶ 22.) Sol Meliá discontinued its all inclusive business model, and later upgraded the facilities and turned the property into a luxury resort under the Gran Meliá Puerto Rico brand. (*See* Docket No. 45 at ¶ 25.)

### D. HMI

HMI is a family corporation organized and doing business under the laws of Puerto Rico. (*See* Docket No. 45 at ¶ 28.) HMI owns and operates a hotel at 75 Cristina Street, Ponce, Puerto Rico, named Hotel Meliá. (*See* Docket No. 45 at ¶ 29.) HMI became incorporated under the laws of Puerto Rico on or around March 1, 1943. (*See* Docket No. 45 at ¶ 30.) HMI currently owns or operates Hotel Meliá. (*See* Docket No. 31.) This address is the only address HMI has ever used for its hotel business. (*See* Docket No. 45 at ¶ 33.) HMI has never expanded their hotel business to another location in Puerto Rico, the continental United States, or elsewhere. (*See* Docket No. 45 at ¶ 34.) On February 19, 1976, HMI filed a complaint at the Superior Court of Puerto Rico seeking declaratory judgment for sole use of the name Meliá in Puerto Rico ("1978 Case"). (*See* Docket No. 45 at ¶ 42.)

HMI's general manager, Nicolás Albors stated that on or about the time the Superior Court ruled on the declaratory judgment, he asked his lawyer to apply for the registration of "Hotel Meliá" at the United States Patent and Trademark Office ("USPTO"). (*See* Docket No. 45 ¶ 48.)

However, neither HMI, nor its lawyer ever filed for the rights to the "Hotel Meliá" name. (*See* Docket No. 45 at ¶ 48.)

### E.  Dorpan's U.S. Registrations

Dorpan owns the marks to Sol Meliá, Registration Numbers 3100367 and 3003619, Meliá Vacation Club, Registration Number 2966400, Me By Meliá, Registration Number 3518860, Gran Meliá, Registration Number 2124741, Meliá Hoteles, Registration Number 2133599, and Meliá Boutique Hotels, Registration Number 3237241. (*See* Docket No. 49–11.) The Sol Group Corp. ("Sol Group") is a Delaware corporation that became organized on October 25, 1988. (*See* Docket No. 45 at ¶ 54.) The Sol Group is a wholly owned subsidiary of Sol Meliá. (*See* Docket No. 45 at ¶ 55.) Sol Group negotiates and sells packages within the travel trade, including retailers and wholesalers, as well as travel and tour operators, for vacation packages in the Sol Meliá hotel chain, which includes hotels using the Meliá family of brands as well as Gran Meliá. (*See* Docket No. 45 at ¶ 57.) Sol Group is also responsible for arranging and executing the publicity and advertisement of the Meliá family brand in the U.S. (*See* Docket No. 45 at ¶ 59.) During the 1990's Sol Meliá managed or operated the Meliá Orlando Suites and Villas Hotel in Florida. (*See* Docket No. 45 at ¶ 61.) Since 2004, Sol Meliá manages or operates the Sol Meliá Vacation Club. (*See* Docket No. 45 at ¶ 63.) Sol Meliá, Desarrolladora, Dorpan and Sol Group are related companies within the meaning of 15 U.S.C. §§ 1055 and 1127.

### F.  Inmobiliaria Meliá

Around 1976, Inmobiliaria de Puerto Rico began to develop a hotel in Puerto Rico. (*See* Docket No. 47–1 at ¶ 3.) HMI sent Inmobiliaria two letters requesting Inmobiliaria to discontinue using the name Meliá. (*See* Docket No. 47–1 at ¶ 4.) On November 7, 1975, Inmobiliaria sent a letter to HMI stating Inmobiliaria had in-

formed their central office in Madrid about the issue regarding the use of Meliá. (*See* Docket No. 47–1 at ¶ 5.) HMI filed suit in the Superior Court of San Juan against Inmobiliaria. (*See* Docket No. 47–1 at ¶ 6.) The Superior Court granted a default judgment in favor of HMI, stating HMI had, "the right to exclusive use in the area of hotels to the Meliá family through Hotel Meliá, Inc. throughout the entire territory of the Commonwealth of Puerto Rico, free from appropriation or use by defendant or their persons of the referred name Meliá and/or Hotel Meliá, be it in the form of hotel, apart-hotel, condo hotel or other similar or related form of business." (*See* Docket Nos. 47–1 at ¶ 7; 60–4 at 5.)

### G.  Meliá Trademark in Puerto Rico

In 1987, Sol Meliá or its predecessor organization—Hoteles Mallorquinos S.A. acquired the stocks of Hoteles Meliá S.A. with all its assets, and obligations. However, said sale of stock did not include the trademark Meliá. (*See* Docket No. 47–1 at ¶ 8.) In 1987, Mr. Gabriel Escarrer acquired a license to use the trademarks of Hoteles Meliá S.A. in Spain from Organización Meliá S.A. (*See* Docket No. 47–1 at ¶ 9.) On March 15, 1995 Dorpan—subsidiary of Sol Meliá—acquired from Organización Meliá S.A. the Meliá trademarks that were registered or that were pending registry in Spain, Puerto Rico and around the world. (*See* Docket No. 47–1 at ¶ 10.) In 1997, Sol Meliá initiated a hotel project in Coco Beach, Río Grande, Puerto Rico. (*See* Docket No. 47–1 at ¶ 12.) In 1998, Mr. Nicolás Albors sent a letter to Mr. Gabriel Escarrer notifying Hotel Meliá's opposition to the use of the name Meliá in the hotel name. (*See* Docket No. 47–1 at ¶ 13.) In 2004, the hotel opened in Río Grande under the name "Paradisus Puerto Rico." (*See* Docket No. 47–1 at ¶ 14.) On March 20, 2007, Dorpan attempted to register the trademark Gran Meliá Puerto

Rico Resorts & Villas with the Department of State of Puerto Rico, but HMI filed an opposition and Dorpan voluntarily withdrew its application. (*See* Docket No. 47–1 at ¶ 15.)

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. *Id.*

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. "The movant must aver an absence of evidence to support the nonmoving party's case." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The burden then shifts to the non-movant to establish the existence of at least one genuine and material fact in dispute. *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001) (citing *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir. 1994)). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.' " *Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006) (alteration in original) (citations omitted).

The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The non-movant "cannot rest upon mere allegation or denial of the pleadings." *Fed. Deposit Ins. Corp. v. Municipality of Ponce,* 904 F.2d 740, 742–43 (1st Cir. 1990) (citing FED.R.CIV.P. 56). That is, "[t]o defeat a motion for summary judgment, evidence offered by the non-movant must be significantly probative of specific facts." *Prescott v. Higgins,* 538 F.3d 32, 40 (1st Cir.2008) (citations omitted) (internal quotation marks omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." *Velazquez–Garcia v. Horizon Lines of Puerto Rico, Inc.,* 473 F.3d 11, 15 (1st Cir.2007) (citations omitted). Rather, "the nonmovant must present definite, competent evidence to rebut the motion." *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993) (citations omitted) (internal quotation marks omitted).

If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *Martinez–Rodriguez v. Guevara,* 597 F.3d 414, 419 (1st Cir.2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir.2006) (quoting *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir.2003)).

"Cross-motions for summary judgment do not alter the summary judgment stan-

dard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 51 (1st Cir.2010) (citing *Adria Int'l Group, Inc. v. Ferré Dev. Inc.*, 241 F.3d 103, 107 (1st Cir.2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. *Wells Real Estate Inv. Trust II, Inc.*, 615 F.3d at 51 (quoting *P.R. American Ins. Co. v. Rivera–Vázquez*, 603 F.3d 125, 133 (1st Cir.2010)) (internal quotation marks omitted). "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion." *Wells Real Estate Inv. Trust II, Inc.*, 615 F.3d at 51 (quoting *P.R. American Ins. Co. v. Rivera–Vázquez*, 603 F.3d 125, 133 (1st Cir.2010)) (internal quotation marks omitted).

### III. Claim and Issue Preclusion

■ A state court judgment has the same preclusive effects in federal court as it would in the state it was issued. *Garcia Monagas v. De Arellano*, 674 F.3d 45, 49–50 (1st Cir.2010). Puerto Rico is considered a state for purposes of claim and issue preclusion. *See id.* (citing *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 61 (1st Cir.2000)). In determining the preclusive effects of a state court judgment, fed-

eral courts look to local law. *See Catullo v. Metzner*, 834 F.2d 1075, 1077 (1st Cir. 1987) (citing *Oliveras v. Miranda Lopo*, 800 F.2d 3, 6 (1st Cir.1986)). In Puerto Rico, the doctrines of claim and issue preclusion are both contained within P.R. Laws Ann. tit. 31 § 3343. *See R.G. Financial Corp. v. Vergara–Nunez*, 446 F.3d 178, 183 (1st Cir.2006) (stating both doctrines included within civil code, albeit with different requirements). Section 3343 states,

> In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31 § 3343.

### A. Issue Preclusion (Collateral Estoppel)

■ Issue preclusion bars the relitigation of a fact essential to the judgment in previous litigation between the same parties. *See Cruz Berrios v. Gonzalez–Rosario*, 630 F.3d 7, 12 (1st Cir.2010).[2] The First Circuit has stated:

> A party seeking to invoke the doctrine of collateral estoppel must establish that (1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determina-

---

**2.** Neither party submitted or cited to translated case law regarding the elements of claim preclusion Puerto Rico law. HMI relies solely upon federal case law while DSD relies upon an untranslated case of the Puerto Rico Supreme Court. The court itself cannot find a translated case stating the elements of issue preclusion. However, the elements for issue preclusion are the same as the elements for

claim preclusion, with the exception of the identity of causes. *See Worldwide Food Dis., Inc. v. Colon et al.*, 133 D.P.R. 827, 1993 P.R.-Eng. 840, 035, 1993 WL 840035 (1993). Seemingly, the elements for claim preclusion under Puerto Rico law and under federal law are similar, if not the same. Therefore, the court shall follow federal precedent on this matter.

tion of the issue was essential to the judgment.

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 90 (1st Cir.2007). As the parties dispute each of these elements, the court analyzes each in turn.

### 1. Identical Parties

■ The most contentious issue in this litigation, and the most heavily briefed by the parties, is whether Dorpan is the successor in interest to Inmobiliaria. This issue is more important to the res judicata analysis because in certain circumstances collateral estoppel can be applied against a party not involved in previous litigation. *See Rodriguez–Garcia v. Miranda–Marin*, 610 F.3d 756, 771 (1st Cir.2010) (holding non-mutual collateral estoppel can be used when one of the parties in the present litigation was not a party to the previous litigation). However, for res judicata to apply, the parties must be identical, or in privity. *See Cruz Berrios v. Gonzalez–Rosario*, 630 F.3d 7, 14 (1st Cir.2010) (holding Puerto Rico res judicata law does not require perfect identity of parties in each suit, but requires parties to be in privity to the parties in the first suit in order for first suit to have preclusive effects).

■ Non-mutual collateral estoppel may be used either offensively or defensively. *See Rodriguez–Garcia*, 610 F.3d at 771. Non-mutual collateral estoppel is used offensively when it is used by a plaintiff who seeks to preclude a defendant from re-litigating an issue the defendant has previously unsuccessfully litigated. *See id.* Non-mutual collateral estoppel is used defensively when a defendant seeks to preclude a plaintiff from re-litigating an issue the plaintiff has previously unsuccessfully litigated. *See id.*

In this case, HMI attempts to use both claim and issue preclusion as a means to prevent DSD from bringing its suit. HMI claims that Dorpan is the successor of interest to Inmobiliaria and therefore was in privity with a party involved in the 1978 Case. Claim and issue preclusion would bar an unsuccessful party, or as in this case a party in privity, from re-litigating the issues of the first suit. However, HMI must demonstrate that DSD is the successor of interest of Inmobiliaria or at least demonstrate there is a genuine issue of material fact as to whether Dorpan ever succeeded to the interest of Inmobiliaria.

To support this claim HMI relies upon the deposition testimony of Monica Julve ("Julve"), a representative of DSD. In that deposition, the strongest evidence HMI musters is that Julve recognizes the logo used by Inmobiliaria as one now owned by Sol Meliá. (*See* Docket No. 60–7 at 1–2.) HMI argues this fact demonstrates that Sol Meliá is the successor in interest of Inmobiliaria because Inmobiliaria was the subsidiary of Meliá International Hoteles, a company which Sol Meliá acquired. (*See* Docket No. 47 at 7.) HMI further argues Inmobiliaria was owned by an organization known as Meliá International Hoteles and Inmobiliaria stated Meliá International Hoteles' central offices were in Madrid (*See* Docket No. 60–2.) An organization by the name of Meliá International Hoteles is currently owned by Sol Meliá. (*See* Docket No. 45 at ¶¶ 8–10.)

■ However, the gap between the evidence that Sol Meliá is the successor of Inmobiliaria's interest is too wide for the court to bridge. The only evidence that Inmobiliaria was a subsidiary of the Meliá International Hoteles that DSD later acquired is the logo used by Inmobiliaria and the common name of Meliá International Hoteles. There are no corporate documents to support HMI's contention for either proposition. There is no evidence showing the Meliá International Hoteles that owned Inmobiliaria was the same Me-

liá International Hoteles that DSD acquired. It is speculative to assume the Meliá International Hoteles logo was owned by a Spanish corporation, which was eventually acquired by Sol Meliá. Within its answer to the 1976 complaint, Inmobiliaria stated that its parent corporation, Meliá International Hoteles, was a Panamanian limited partnership, not a Spanish organization. (*See* Docket No. 80–13 at 2.) DSD admits it acquired a Spanish organization named Meliá International Hoteles, but Inmobiliaria has never been linked to that organization. In order to create a material issue of fact, HMI must provide more specific evidence to show that Inmobiliaria's interest was acquired by DSD. HMI has not met this burden. Therefore, the court finds, based on the evidence put forth by HMI, no reasonable jury could conclude that Sol Meliá is the successor in interest of Inmobiliaria.

## 2. Identical Issue

HMI claims the issue in the 1978 Case is the same as the current litigation because it deals with HMI's ability to exclusively use the Meliá name within Puerto Rico. (*See* Docket No. 66 at 7–9.) Dorpan argues the issue in the current litigation is different because Dorpan owns several federal trademarks to the Meliá name making the litigation a trademark dispute as opposed to a suit regarding ownership of the name through continuous use. (*See* Docket No. 64 at 12.) While the parties approach this dispute differently than the 1978 Case, the underlying dispute is the same in that HMI asserts it has the exclusive right to use the name Meliá in conjunction with hotels in Puerto Rico. DSD also claims it has the right to use the name Meliá. Even though the legal considerations may be different at the present time, the issue is the same: the right to use the Meliá name. Accordingly, the

court finds this element of issue preclusion has been met.

### 3. Issue Actually Litigated

The parties next dispute whether these issues were actually litigated in the 1978 Case. The judgment in the 1978 Case was a default judgment and usually default judgments may not be used for estoppel purposes. *See N. Atl. Distrib., Inc. v. Teamsters Local Union No. 430,* 497 F.Supp.2d 315, 320 (D.R.I.2007) (holding federal law does not allow default judgment to have preclusive effect for collateral estoppel). However, some exceptions exist to this general rule that allow the court to give preclusive effects if the interests of fairness so require. *See Dein Host, Inc. v. Pignato,* 86 B.R. 318, 323 (D.N.H. 1988) (holding court may give preclusive effects to issues determined in default judgment if issues raised, but not litigated). However, even in such circumstances a strong presumption against preclusion exists. *See id.*

■ In this case, the parties agree the 1978 Case resulted in a default judgment. HMI contends that regardless of the default judgment, issue preclusion should apply in this case because Inmobiliaria answered the complaint and participated in some discovery before failing to show up for the hearing. (*See* Docket No. 47 at 8.) This fact does not require the court to give the 1978 Case preclusive effect over the current matter. First, there is no evidence to show the issue was previously litigated. Even assuming Inmobiliaria did participate in some discovery, there is not showing in what, if any, adversarial proceedings or hearings Inmobiliaria participated. Secondly, for the exception to apply, HMI must demonstrate the unfairness it would bear if the court did not give preclusive effects to the prior judgment. HMI does not make such a showing. If the circumstances were different this ex-

ception might be applicable, but under the current facts, the court finds the issue was not actually litigated in the 1978 Case and there is no unfairness in not giving preclusive effects to that judgment.

### 4. Prior Judgment

The court holds the prior judgment in the 1978 Case is not an appropriate judgment to serve as the basis of issue preclusion. As discussed above, default judgments are not typically the type of judgments that have preclusive effects. HMI points to persuasive precedent from other circuits to support the proposition that a default judgment can have preclusive effects when the party has participated in the litigation, but chooses not to defend the case on the merits. *See In re Bush,* 62 F.3d 1319, 1325 (11th Cir.1995) (holding trial court did not abuse its discretion in finding preclusive effects of default judgment when party substantially participated the action). The *Bush* court further stated when a party attempts to frustrate the issuance of a judgment through default, the court is particularly justified in giving the default judgment preclusive effects. *See id.*

However, these elements are not present in this case. HMI cannot reasonably argue Inmobiliaria defaulted in order to escape judgment on the merits. There is no allegation or factual scenario that would allow the court to believe Inmobiliaria acted in such a manner in order to preserve arguments thirty years later. Additionally, HMI does not support with evidence the extent to which Inmobiliaria participated in the 1978 Case. Without such support, the court cannot determine that Inmobiliaria participated to such a degree as to warrant conferring preclusive effects on the 1978 default judgment. Therefore, the court finds the prior judgment does not carry preclusive effects.

### 5. Determination Essential to Judgment

Having found the issues in the 1978 Case were not actually litigated, it follows that the determination of naming rights by the state court was not essential to the judgment that was entered. Default judgment was entered. The decision of the court was not based on a vigorous defense of the parties' positions. (*See* Docket No. 60-4.) It was made after one side presented its arguments. Although the court did state numerous findings of fact that include the finding that a third party may not use the Meliá name in regards to hotels within Puerto Rico, this is not necessarily essential to the judgment. Even without such a finding, the court could have found for HMI solely because Inmobiliaria defaulted. The court finds the determination that HMI had the sole right to use the name Meliá in conjunction with hotels on the island was not essential to the previous judgment.

### B. Claim Preclusion (Res Judicata)

██ Claim preclusion prohibits parties from litigating any claim that was, or could have been, litigated in a matter. *See Garcia Monagas,* 674 F.3d at 50–51. A party asserting claim preclusion under Puerto Rico law must demonstrate: "(i) there exists a prior judgment on the merits that is final and unappealable; (ii) the prior and current actions share a perfect identity of both thing and cause; and (iii) the prior and current actions share a perfect identity of the parties and the capacities in which they acted." *Id.* (internal quotation marks omitted). If the same object or matter is involved between the present and prior case, then the action is considered to have a perfect identity of thing. *See id.* If the actions derive from the a common nucleus of operative fact, then the actions share an identity of cause. *See id.* In order to establish perfect identity of the

parties, it must be demonstrated that the parties in the present and prior action are the same or that the parties in the present and prior action were in privity with each other. *See id.* (citing P.R. Laws Ann. tit. 31, § 3343).

■ The court applies the foregoing analysis of the elements for issue preclusion to the elements of claim preclusion. The court finds elements (i) and (iii) to be lacking in this case because the judgment was not on the merits and the parties are not the same between the 1978 litigation and the present case. Therefore, claim preclusion does not bar DSD's claims in this case.

For the foregoing reasons, the court **DENIES** HMI's partial motion for summary judgment seeking claim and issue preclusion.

## IV.  Validity of Dorpan's Trademarks

The parties each argue they have the superior right to use the Meliá name in conjunction with hotel services on the island of Puerto Rico. However, even if DSD is granted the right to the Meliá name within Puerto Rico, HMI may be able to establish its prior, consistent use of the name, allowing HMI to continue to use the Meliá name in its location in Ponce, while DSD is allowed to use the name on the rest of the island. Because these issues are separable and distinct, each will be taken in turn.

### A.  Validity of DSD's U.S. Trademarks

For clarity of the record, DSD filed this complaint seeking a declaratory judgment that it holds the right to use the term Meliá pursuant to its trademarks. DSD claims it has senior rights to use the Meliá name within the U.S. because it owns various U.S. registrations under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"). While DSD does not assert a trademark infringement claim against HMI, the court lays out this framework for

such a claim because the first prong of this test is essential to DSD's argument and HMI uses the third prong in order to argue that DSD and HMI cannot both use the term Meliá within Puerto Rico without causing confusion. Therefore, the trademark infringement analysis is useful in deciding these issues.

■ The Lanham Act allows the trademark holder to protect the trademark against infringement from others. *See Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 11–12 (1st Cir. 2008). The Lanham Act was designed to provide nationwide protection to trademark users. *See Thrifty Rent–A–Car Sys., Inc. v. Thrift Cars, Inc.,* 831 F.2d 1177, 1180 (1st Cir.1987); *Purolator, Inc. v. EFRA Distribs., Inc.,* 687 F.2d 554, 558–59 (1st Cir.1982) (holding Lanham Act protection for trademarks apply to Puerto Rico). The standard rule is the first to appropriate at mark has the exclusive right to use that mark in the course of business. *See Thrifty,* 831 F.2d at 1180. A business may register its trademark in order to protect is exclusive right to use the mark throughout the nation. *See id.* The registration of a mark also acts to put all other users of the same or confusingly similar mark on constructive notice of the trademark holder's interest in the mark. *See id.* Section 1065 of the Lanham Act allows a mark to become incontestable when a registrant files, "an affidavit within one year after the expiration of any five year period following registration, during which the mark has been in continuous use." *Thrifty,* 831 F.2d at 1180. That section also requires a registrant to show there have been no final decisions adverse to the registrant's claim of ownership to the mark, there are no proceedings pending involving the ownership of the trademark, and the trademark is not a generic

name for the good or service for which it is registered. *See* 15 U.S.C. § 1065(1–4).

■■■■■ The holder of a trademark may bring a trademark infringement claim under the Lanham Act. In order to do so, the trademark holder must prove: (1) it owns the marks in question; (2) another company or business used the same or similar marks without the registrant's permission; and (3) the infringing use of the mark is likely to confuse consumers. *See Venture Tape Corp. v. McGills Glass Warehouse,* 540 F.3d 56, 60 (1st Cir.2008). In order to demonstrate the likelihood of consumer confusion, the First Circuit has developed eight criteria the district courts should evaluate. These criteria are:

> (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*Visible Sys. v. Unisys,* 551 F.3d 65, 73 (1st Cir.2008).

■■■■ HMI recognizes that DSD owns the registered trademark to the Meliá name. However, HMI asserts that the registration of the mark is invalid and was procured fraudulently. (*See* Docket No. 66 at 16–19.) Additionally, HMI asserts that once this trademark is deemed fraudulent, DSD cannot use the Meliá name in Puerto Rico due to the likelihood of consumer confusion. However, these arguments are not sufficient to invalidate DSD's registration.

Section 1141e of the Lanham Act provides holders of an international trademark the ability to register those trademarks within the U.S. *See* 15 U.S.C. § 1141e.[3] The registration for the Gran Meliá mark specifically states it was granted due to the Spanish registration of this mark. (*See* Docket No. 49–31.) This demonstrates the registration was not granted based on prior use within the U.S.

Secondly, in order for HMI to succeed on its claim that Dorpan fraudulently obtained the trademark registration, HMI must show that Dorpan included false or material misrepresentations of fact in its registration materials. *See* 15 U.S.C. § 1115(b)(1); *Universal Nutrition Corp. v. Carbolite Foods, Inc.,* 325 F.Supp.2d 526, 531 (D.N.J.2004). To support this claim HMI points to Dorpan's registration affidavit in which Dorpan states Dorpan was using the mark in commerce and no other person had the right to use the mark. (*See* Docket No. 49–31.) However, as stated above, Dorpan obtained the registration based on its international use of the mark. (*See id.*) Further, there is little evidence to support HMI's contention that Dorpan applied for this mark with knowledge of HMI's use. Dorpan applied for the mark based on its prior use in connection with the businesses it ran internationally and within the U.S. for both hotel and travel services. Therefore, with a lack of evidence to prove HMI was attempting to appropriate the Meliá name away from HMI by registering the name as a trademark, the court will not invalidate Dorpan's trademark registration to the name Meliá. DSD's trademark is valid and proper.

---

**3.** 15 U.S.C. § 1141e states: "Subject to the provisions of section 1141h of this title, the holder of an international registration shall be entitled to the benefits of extension of protection of that international registration to the United States to the extent necessary to give effect to any provision of the Madrid Protocol."

## B.  Limited Area Exception

The Lanham Act, specifically 15 U.S.C. § 1115(b)(5),[4] allows for a limited area exception to the incontestability of a registered trademark. *See Thrifty*, 831 F.2d at 1180–81. Essentially, this subsection carves out an exception for junior trademark users who operate in a remote location. *See id.* at 1181 (citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918)). The junior user may have the right to continued use of an infringing mark, so long as the use of the infringing mark was established prior to the registration of the mark by the senior user. *See Thrifty*, 831 F.2d at 1181. To sustain this defense a junior user must demonstrate: (1) that it adopted, without knowledge of the senior mark users use, its mark before the senior user registered the mark; (2) the extent of the trade area in which the junior user operated prior to registration by the senior operator; and (3) the junior users continuously used the mark in the trade area prior to registration by the senior mark user. *See Thrifty*, 831 F.2d at 1181. A junior mark user's interest is frozen at the time the senior mark user registers the mark. *See id.* This essentially means the junior mark user is not allowed to expand its business beyond the geographical location once the senior user register's the mark.

DSD does not contest HMI's right to continue using the Meliá name in connection to the hotel in Ponce. (*See* Docket No. 44 at 13.) As such, the only remaining analysis is whether the two uses of the term Meliá can co-exist within Puerto Rico. The court finds they can. In so doing the court notes there is no single factor that is dispositive of this analysis and the application of these factors should be flexible as opposed to a result of strict calculation. *See Venture Tape*, 540 F.3d at 60 (stating no single factor determines consumer confusion inquiry); *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir.2006) (holding assessment of consumer confusion a result of consultation of factors, not result of mechanical formula).

The criteria are split in this case. In support of consumer confusion, the marks, Gran Meliá and Hotel Meliá, are reasonably similar. Both businesses are hotels, that advertise in Puerto Rico and seek to attract overnight lodgers. Additionally, HMI has put forth some evidence of confusion by vendors and patrons between Gran Meliá and HMI. (*See* Docket Nos. 66–2, 66–3 & 66–4.) However, opposing the conclusion that the simultaneous use of these marks will lead to confusion are the rest of the factors, mainly that neither party accuses the other of subjectively attempting

---

4. In pertinent part, Section 1115(b)(5) states: To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. [Except when] the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved . . .

to profit from the good-will earned by the other and the overall strength of each mark. HMI has built up a strong reputation within the Ponce area, while DSD has built up strong international good-will outside of Ponce.

With the factors split, the court finds these two marks can co-exist within Puerto Rico without causing substantial confusion to the reasonable consumer. However, the court must define the limits within which each mark may be used. *See Thrifty*, 831 F.2d at 1181. HMI's use was frozen at the time DSD acquired the trademark on December 30, 1997. (*See* Docket No. 49–11.) On this date, HMI's use of the Meliá mark is frozen. *See Thrifty*, 831 F.2d at 1181. As of this date, HMI operated one hotel in Ponce, Puerto Rico. HMI had no plans to expand its business at that time and had been operating in that location for the previous eighty to one hundred years. These facts demonstrate HMI was in continuous operation within Ponce, long before the registration of Gran Meliá by Dorpan. Therefore, the court finds HMI may continue to use the Meliá name within Ponce, Puerto Rico, but must refrain from using the Meliá name in any future business ventures outside of Ponce. Conversely, DSD is barred from extending its services into Ponce, but may use its trademarks throughout the rest of the island and the U.S.

Therefore, the court **GRANTS** DSD's motion for summary judgment (Docket No. 44).

## V. Conclusion

The court **DENIES** HMI's partial motion for summary judgment, Civil No. 11–1188 (Docket No. 47). For the above mentioned reasons, the court **GRANTS** DSD's motion for summary judgment, Civil No. 11–1138 (Docket No. 44).

**SO ORDERED.**